# **EXHIBIT F**

# UNITED MINE WORKERS OF AMERICA 1992 BENEFIT PLAN

# AGREEMENT AND DECLARATION OF TRUST

UNITED MINE WORKERS OF AMERICA 1992 BENEFIT PLAN
AGREEMENT AND DECLARATION OF TRUST

TABLE OF CONTENTS

| | | |
|---|---|---:|
| ARTICLE I. | (Introduction) | 1 |
| ARTICLE II. | (Definitions) | 1 |
| | (1) "Act" | 1 |
| | (2) "BCOA" | 1 |
| | (3) "Dependent" | 1 |
| | (4) "Eligible Beneficiary" | 1 |
| | (5) "IRC" | 1 |
| | (6) "Last Signatory Operator," "1988 Last Signatory Operator," and "Related Person" | 1 |
| | (7) "Plan" and "1992 UMWA Benefit Plan" | 2 |
| | (8) "Plan Year" | 2 |
| | (9) "Trustees" | 2 |
| | (10) "Trust" | 2 |
| | (11) "UMWA" or "Union" | 2 |
| ARTICLE III. | (Administration) | 2 |
| ARTICLE IV. | (Creation) | 4 |
| ARTICLE V. | (Trustee responsibilities, Administration) | 4 |
| ARTICLE VI. | (Control of assets) | 5 |
| ARTICLE VII. | (Asset management) | 6 |
| ARTICLE VIII. | (Payment of expenses) | 8 |
| ARTICLE IX. | (Trustee liability) | 8 |
| ARTICLE X. | (Recordkeeping, reporting, delegation) | 9 |
| ARTICLE XI. | (Financing Requirements) | 11 |
| ARTICLE XII. | (Amendments) | 15 |
| ARTICLE XIII. | (Use of trust assets) | 16 |
| ARTICLE XIV. | (Applicable law) | 16 |
| | (Signatures) | 17 |

# 1992 PLAN -- AGREEMENT AND DECLARATION OF TRUST

ARTICLE I.    (Introduction)

This AGREEMENT was made and entered into between the United Mine Workers of America ("UMWA") and the Bituminous Coal Operators' Association, Inc. ("BCOA"), effective as of October 24, 1992.  This Agreement and Declaration of Trust, made in connection with the establishment of the Benefit Plan required under section 9712 of the Internal Revenue Code of 1986, as amended by the Act, is hereby amended as set forth below.

ARTICLE II.    (Definitions)

The following terms shall have the meanings hereinafter set forth:

(1)  "Act" means the Coal Industry Retiree Health Benefit Act of 1992, codified in relevant part at sections 9701 et seq. of the Internal Revenue Code of 1986.

(2)  "BCOA" means the Bituminous Coal Operators' Association, Inc.  For purposes of any action required or permitted under this Trust, if the BCOA ceases to exist, or if more than 50 percent of the tonnage membership of the BCOA on October 24, 1992, has withdrawn from BCOA, then the employers representing a majority vote, weighted by tonnage produced as of the time of such action, of existing employers who were BCOA members on October 24, 1992, shall have all the rights and obligations of the BCOA.

(3)  "Dependent" has the meaning set forth in the Plan document.

(4)  "Eligible Beneficiary" has the meaning set forth in the Plan document.

(5)  "IRC" means the Internal Revenue Code of 1986, as amended by the Act.

(6)  "Last Signatory Operator," "1988 Last Signatory Operator," and "Related Person" shall have the meanings assigned, respectively, to such terms under the Act.  The term "Last Signatory Operator" includes a successor in interest of such operator.  If a person becomes a successor of a Last Signatory Operator after October 24, 1992, the Last Signatory Operator may transfer any liability of such operator under this Trust with respect to an eligible beneficiary described in section 9711(f) of the IRC to such successor, and such successor shall be treated as the Last Signatory Operator with respect to such eligible beneficiary for purposes of this Trust.  Notwithstanding the preceding sentence, the Last Signatory Operator transferring such

1992 PLAN -- AGREEMENT AND DECLARATION OF TRUST

assignment (and any related person) shall remain the guarantor of the benefits provided to the eligible beneficiary and of the obligations under this Trust.

(7)  "Plan" and "1992 UMWA Benefit Plan" mean the United Mine Workers of America 1992 Benefit Plan established by the UMWA and BCOA pursuant to section 9712 of the IRC and the provisions of this Agreement and Declaration of Trust. Coverage of Eligible Beneficiaries under the Plan is not effective prior to February 1, 1993.

(8)  "Plan Year" means the year ending December 31.

(9)  "Trustees" means the trustees of this Trust designated in accordance with the provisions of Article III hereof, who shall be the named fiduciaries and the Plan Administrator, as those terms are defined in the Employee Retirement Income Security Act of 1974, as amended ("ERISA"); provided, however, that this instrument may be amended pursuant to Article XII hereof to designate other or additional named fiduciaries.

(10) "Trust" means the Agreement and Declaration of Trust established hereunder.

(11) "UMWA" or "Union" shall mean the United Mine Workers of America.

ARTICLE III.    (Administration)

For the period from the initial appointment of Trustees through February 28, 1993, the Trust shall be Administered by a Board of five trustees, two of whom shall be appointed by BCOA, and two of whom shall be appointed by the Union. The fifth Trustee shall be appointed by the original four Trustees, and shall serve on the Board of Trustees for the sole purpose of breaking a deadlock on any matter properly before the Trustees. The Union may remove the Trustees appointed by it, at any time and for any reason, and BCOA may remove the Trustees appointed by it, at any time and for any reason. In the event of resignation, death, removal, inability or unwillingness to serve of a Trustee, the party who appointed that Trustee shall appoint a successor.

Effective March 1, 1993, the Trust shall be Administered by a Board of four trustees, two of whom shall be appointed by BCOA, and two of whom shall be appointed by the Union. The Union may remove the Trustees appointed by it, at any time and for any reason, and BCOA may remove the Trustees appointed by it, at any

1992 PLAN -- AGREEMENT AND DECLARATION OF TRUST

time and for any reason. In the event of resignation, death, removal, inability or unwillingness to serve of a Trustee, the party who appointed that Trustee shall appoint a successor.

The Trustees so designated shall constitute the Board of Trustees to administer the Plan and Trust, as they may be amended from time to time. The Union shall designate one Trustee to serve as Chairman.

For purposes of taking any action and any other aspect of administration under the Plan or Trust, a quorum shall consist of one Trustee appointed by the Union and one Trustee appointed by BCOA; provided, however, that a quorum shall not be deemed to exist unless all Trustees have received reasonable notice of the meeting at which any action is taken, unless such notice is waived. Any Trustee may call a meeting of the Trustees. The Trustees need not be physically present to constitute a quorum, but may conduct business telephonically or through similar modes of simultaneous communication. Alternatively, the Trustees may act without meeting, by written resolution signed by all Trustees.

In the event that a meeting is held or action is taken without the participation of two Trustees appointed by the Union and two Trustees appointed by BCOA, either side that is represented by fewer than two Trustees shall nonetheless be entitled to cast two votes. In all other cases, each Trustee will be entitled to one vote.

Effective March 1, 1993, in the event the Trustees deadlock, and if they have not retained a professional arbitrator for the purpose of resolving deadlocks and if they cannot agree to the appointment of a neutral arbitrator, any Trustee may petition the United States District Court for the appointment of such arbitrator, pursuant to Section 302(c)(5) of the Labor Management Relations Act of 1947, 29 U.S.C. § 186(c)(5).

The UMWA and the BCOA may each designate a liaison representative who shall be permitted to attend Trustee meetings, to request and receive data and information relating to Fund operations, and to meet with Fund staff and representatives regarding issues relating to the Fund.

The Trustees shall retain outside co-counsel who shall serve as the legal advisors to the Fund and the Trustees. This shall not preclude the Trustees from exercising their authority to retain additional counsel as set forth in Article VII(9). The fees and expenses of counsel shall be paid from the Trust.

## 1992 PLAN -- AGREEMENT AND DECLARATION OF TRUST

ARTICLE IV.     (Creation)

The Trust established hereby is an irrevocable trust created pursuant to section 9712 of the IRC and section 302(c) of the Labor-Management Relations Act of 1947, which shall endure as long as the purposes for its creation shall exist. The Trust is an organization exempt from tax under section 501(a) of the IRC. The Trust consists of such sums of money and other property, acceptable to the Trustees, as from time to time shall be contributed to, held by, or paid or delivered to the Trustees and such earnings, profits, and increments thereon as may occur from time to time. All such money and other property due and owing or delivered to the Trustees and all investments and reinvestments made therewith or proceeds thereof and all earnings and profits thereon, less the payments which at the time of reference shall have been made by the Trustees as authorized herein, are referred to herein as the "assets of the Trust." The assets of the Trust shall be held by the Trustees and dealt with in accordance with the express provisions of this instrument and the requirements of law.

The monies to be paid into the Trust shall not in any manner be liable for or subject to the debts, contracts, liabilities or torts of the parties to this Agreement or of any Last Signatory Operator, Related Person or Eligible Beneficiary.

ARTICLE V.     (Trustee responsibilities, Administration)

The Trustees, or such other persons as may be properly designated pursuant to Article X hereof, are directed and authorized (a) to hold to invest and to reinvest the assets of the Trust as provided herein; (b) to pay monies from the Trust in accordance with the terms of the Plan for the purpose of distributing the benefits payable under the Plan; and (c) to pay the cost of administration of the Trust as hereinafter provided.

Subject to the provisions of the Coal Industry Retiree Health Benefit Act of 1992, this Trust and the Plan, the Trustees shall have full and exclusive authority and discretion to determine all questions of coverage and eligibility, including all factual determinations, investment of trust funds, delivery of benefits, and all other related matters. They shall have full discretionary power to construe the provisions of this Agreement and Declaration of Trust and the Plan.

1992 PLAN -- AGREEMENT AND DECLARATION OF TRUST

The Trustees are empowered to promulgate such reasonable rules and regulations as they determine to be desirable for carrying out the purposes of this Trust and of the Plan. In addition to any other powers granted to the Trustees, the Trustees are empowered to do all acts which they deem necessary or proper and to exercise any and all powers of the Trustees under this instrument under such terms and conditions as they may deem to be for the best interest of the Trust.

ARTICLE VI.    (Control of assets)

The Trustees, or other persons as may be properly designated pursuant to Article X hereof, shall have full discretionary powers of management and control, of sale and resale, in fee simple or otherwise, mortgage, lease, and pledge, of the assets of the Trust, and shall not be restricted to investments in securities or property of the character now or hereafter authorized by law or rules of the United States District Court for the District of Columbia; provided; however, that all such investments shall be made in a manner consistent with the needs and purposes of the Plan. To the extent permitted by ERISA, the Trustees are authorized to invest assets of the Trust in deposits described in Section 408(b)(4) of ERISA, and in common or collective trust funds or pooled investment funds, including but not limited to those described in Section 408(b)(8) of ERISA. The assets of the Trust shall be invested and reinvested, without distinction between principal and income, in securities and other forms of property, including but not limited to, corporate stocks (common and preferred), debentures, bonds, and other obligations whether or not secured, but excluding real property. The Trustees, or such other persons as may be properly designated pursuant to Article X hereof, shall not be limited as to the amount or type of any investment in relation to the amount or type of investments constituting the Trust as a whole, subject to applicable legal requirements, and the needs and purposes of the Plan.

The Trustees, or such other persons as may be properly designated pursuant to Article X hereof, may, in their discretion, keep such portion of the assets of the Trust in cash or cash balances as the Trustees may determine to be reasonably necessary to satisfy the current needs of the Trust.

- 5 -

## 1992 PLAN -- AGREEMENT AND DECLARATION OF TRUST

ARTICLE VII.   (Asset management)

Neither by way of limitation nor in derogation, but in amplification of any powers granted herein, provided, however, that all such powers are exercised in a manner consistent with the needs and purposes of the Trust, the Trustees, or such other persons as may be properly designated pursuant to Article X hereof, are further authorized:

(1) To purchase, sell, exchange, convey, transfer or dispose of, and also grant options with respect to, any property, at any time held by them and to make any sale, private or public;

(2) To compromise, compound and settle any debt or obligation due from third persons to them or to third persons from them, as Trustees hereunder, and to reduce the rate of interest on, to extend or otherwise modify, or to foreclose upon default or otherwise enforce, any such obligations;

(3) To vote in person or by proxy and to give general or special proxies or powers of attorney, with or without power of substitution, on any securities or other investments held by them;

(4) To exercise any rights or options appurtenant to any securities or other property held by them for the conversion thereof into other securities or property, or to exercise any rights or options held by them to subscribe for or purchase additional securities or other property, and to make any and all necessary payments with respect to any such conversion or exercise;

(5) To join in, dissent from or oppose, the reorganization, recapitalization, consolidation, sale or merger of corporations or properties of which they may hold stocks, bonds or other securities or in which they may be interested, upon such terms and conditions as they may deem prudent; to pay any expenses, assessments or subscriptions in connection therewith and to accept any securities or property (whether or not the Trustees would be authorized to then invest in such securities or property) which may be issued upon any such reorganization, recapitalization, consolidation, sale or merger, and thereafter to hold the same;

(6) To make, execute, acknowledge and deliver any and all instruments and other documents that may be necessary or appropriate to carry out the powers herein granted;

## 1992 PLAN -- AGREEMENT AND DECLARATION OF TRUST

(7) To enforce any right, obligation or claim in their absolute discretion and in general to protect in any way the interest of the Trust, either before or after default with respect to any such right, obligation or claim, and, in case they shall consider such action for the best interests of the Trust, in their absolute discretion to abstain from the enforcement of any right, obligation or claim and to abandon any property which at any time may be held by them;

(8) To borrow or raise money for the purpose of the Trust in such amount and upon such terms and conditions as in their absolute discretion they may deem advisable; and for any sums so borrowed to issue their promissory note as Trustees and to secure the repayment thereof by mortgaging or pledging all or any part of the Trust; provided that no person lending money to the Trustees shall be bound to see to the application of the money loaned or to inquire into the validity, expediency or propriety of any such borrowing;

(9) To employ suitable agents, consultants and counsel from time to time, and to pay them reasonable expenses and compensation;

(10) To retain without liability for depreciation any securities or property at any time purchased and/or received by the Trustees as a part of the Trust;

(11) To do all acts which may be necessary to comply with any of the requirements of ERISA, the Act, or any other federal law;

(12) To enter into any and all contracts and agreements for carrying out the terms of the Plan and the Trust and for the best interest of the Trust;

(13) The Trustees may, in their sole discretion, cause the securities which from time to time may comprise the Trust, to be registered in their name as Trustees hereunder, or in the name of their nominee without disclosing the ownership thereof or to take and keep the same unregistered, and to retain them, or any part thereof, in such conditions that they will pass by delivery.

Notwithstanding the above authority granted the Trustees hereunder, no power shall be exercisable in any manner which violates the requirements of the Act, ERISA or any other applicable law, governmental rule or regulation, or which is inconsistent with the needs and purposes of the Trust.

- 7 -

1992 PLAN -- AGREEMENT AND DECLARATION OF TRUST

ARTICLE VIII.   (Payment of expenses)

The expenses incurred by the Trustees in the performance of their duties hereunder, including reasonable compensation for the Trustees in accordance with the provisions of Section 408(c)(2) of ERISA, for agents, and for service of counsel rendered to the Trustees and expenses incident thereto, and all other proper charges and disbursements of the Trustees, including all taxes of any kind and all kinds whatsoever that may be levied or assessed under existing or future laws of any jurisdiction upon or in respect of the Trust hereby created or any money, property or securities forming a part thereof, shall be paid by the Trustees out of the Trust.

The Trustees are authorized to and shall make final resolution of disputes concerning benefits under the Employer-provided benefit plans described in section 9711 of the Internal Revenue Code.  The Trustees are authorized to use Trust resources for purposes of resolving such disputes.

Unless prohibited by section 408(c)(2) of ERISA, each Trustee shall receive compensation at the rate of $50,000.00 per year; provided, however, that the compensation of any Trustee of this Trust who also serves as a Trustee with respect to the UMWA Combined Benefit Fund, the UMWA 1950 Pension Trust, the UMWA 1974 Pension Trust, the UMWA 1993 Benefit Trust, and/or the UMWA Cash Deferred Savings Trust, shall be reduced as necessary to assure that the annual compensation of such Trustee from all of such Trusts does not exceed $80,000; and provided further that the total annual compensation paid to all BCOA-appointed Trustees from all of such Trusts shall not exceed $160,000, and the total annual compensation paid to all UMWA-appointed Trustees from all of such Trusts shall not exceed $160,000.

ARTICLE IX.   (Trustee liability)

A Trustee shall not be liable for the making, retention, or sale of any investment or reinvestment made by him or her as herein provided; for any loss to or diminution of the Trust; or for anything done or omitted under this instrument, except for his own willful misconduct or lack of good faith, or any other action or omission for which personal liability is imposed under Part 4 of Subtitle B of Title I of ERISA.  Any Trustee may consult with legal counsel concerning any questions which may arise with reference to his duties under this instrument, and except as otherwise provided by ERISA, the opinion of such counsel shall be full and complete protection in respect to any

1992 PLAN -- AGREEMENT AND DECLARATION OF TRUST

action taken or suffered by such Trustee hereunder in good faith and in accordance with the opinion of such counsel.

When and if a monetary claim or suit is lodged against one or more fiduciaries of the Trust, including the Trustees thereof, in their individual capacities, arising out of their action as fiduciaries, the Trust may (and if such fiduciary is a Trustee, then to the extent permitted by law, the Trust shall) engage and compensate counsel to represent such fiduciary until a final court decision, or a final government agency decision if no court appeal is filed, finds that such fiduciary in his individual capacity (1) has breached his fiduciary obligations under ERISA; (2) by so doing has caused a loss to the Trust or its corresponding Plan or has gained by use of Trust assets; and (3) is therefore liable in his individual capacity for damages or to return any profit occasioned by such breach to the complaining person, persons, entity or entities.

If the Trust expends moneys for counsel under the preceding paragraph, and the individual liability described therein is so finally determined against one or more fiduciaries, each individual found so liable shall reimburse the Trust for moneys so expended for his counsel.

No provision in this Article shall be construed in a manner violative of the provisions of Section 410 of ERISA.

ARTICLE X.    (Recordkeeping, reporting, delegation)

The Trustees, or such other persons as may be properly designated pursuant to this Article, shall keep accurate and detailed accounts of all investments, receipts, and disbursements and other transactions hereunder, and such accounts, books and records relating thereto shall be open to inspection and audit by BCOA and the Union at all reasonable times at the offices of the Trust. The Trustees, or other such persons as may be properly designated pursuant to this Trust, shall be responsible for providing Eligible Beneficiaries under the Plan with all information required to be furnished pursuant to the provisions of ERISA or the regulations promulgated thereunder.

The Trustees, or such other persons as may be properly designated pursuant to this Article, shall be responsible for maintaining records sufficient to comply with any requirements of ERISA and for the filing of all reports with the Labor Department and Treasury Department which may be required by any provision of ERISA or the regulations issued thereunder, including the plan

1992 PLAN -- AGREEMENT AND DECLARATION OF TRUST

description and reports specified by Section 101(b). A copy of each document or report provided to Eligible Beneficiaries or filed pursuant to the requirements of ERISA or any other applicable law, governmental rule or regulation shall be sent to BCOA and to the Union unless the right to receive such copy has been waived in writing. The Trustees shall provide BCOA and the Union with such other information and/or documentation as BCOA or the Union may reasonably request within a reasonable time from when such request shall be made.

The Trustees shall provide BCOA and the Union with quarterly reports summarizing all pending litigation involving the Trust and the Plan and describing all significant operational issues that are under review. Ninety days following the closing of the Plan Year, the Trustees shall file with BCOA and the Union a written report setting forth in such form and detail as they may request, the transactions effected by the Trustees during the period from the close of the period covered in the previous report. The reports shall be supplemented by the annual report of an independent certified public accountant and by the report required by Section 103 of ERISA. Upon the expiration of ninety (90) days from the date of any report to BCOA and the Union, the Trustees shall be forever released and discharged from any liability or accountability to anyone as respects the propriety of their acts or transactions shown in the aforementioned report except as otherwise provided by law or with respect to any acts or transactions as to which BCOA or the Union shall file written objections with the Trustees within such period of ninety (90) days.

The UMWA or the BCOA may audit the accounts, books and records, and operation of the Plan and Trust, at any time and for any reason, upon reasonable notice to the Trustees. The Trustees shall cooperate fully in connection with any such audit and shall make available appropriate personnel and records deemed necessary by the auditors for inspection and copying at reasonable times and places.

The Trustees are hereby authorized to allocate or delegate fiduciary responsibilities in any manner permitted under ERISA, including Section 405(c)(1). The Trustees may appoint an investment manager or managers to manage any investments held under this instrument as permitted by Section 402(c) of ERISA.

## 1992 PLAN -- AGREEMENT AND DECLARATION OF TRUST

ARTICLE XI.   (Financing Requirements)

(1) Each Last Signatory Operator, 1988 Last Signatory Operator and Related Person shall pay to the Trustees the contributions required of it under section 9712 of the IRC and this Article, and shall provide the Trust with any security required under such Act and this Article. For purposes of this Article, an individual shall be considered to be "attributable" to an Operator if the Operator is the Last Signatory Operator with respect to such individual.

(2) (A) Each 1988 Last Signatory Operator shall pay to the trust an annual prefunding premium equal to the product of:

(I) the prefunding premium rate determined under subsection (B) of this section; and

(II) the number of individuals receiving benefits from the Plan who are attributable to such Operator, plus the number of individuals receiving benefits from an individual employer plan maintained by such Operator who are entitled to receive such benefits under section 9711 of the IRC.

(B) Once each year, the Trustees shall determine the prefunding premium rate, following consultation with the UMWA and the BCOA, which shall be the rate necessary to provide the Trust with sufficient assets, when added to the per beneficiary premiums, to pay the projected benefits and administrative costs for the succeeding plan year, and, at the discretion of the Trustees, to provide for a reserve in an amount not exceeding the cost of three months of projected benefits.

(C) In the event that a 1988 Last Signatory Operator is unable to provide the security required under section (4), below, the annual prefunding premium due from such Operator under this section shall be in an amount determined by the Trustees, but no less than five times the amount otherwise required under subsection (A), above.

(3) Each 1988 Last Signatory Operator and each Last Signatory Operator that is not a 1988 Last Signatory Operator shall pay a per beneficiary premium, which shall be set by the Trustees as of November 30 of each Plan Year, following consultation with the UMWA and the BCOA. The per beneficiary premium shall be payable in monthly installments equal to 1/12th of the product of --

- 11 -

1992 PLAN -- AGREEMENT AND DECLARATION OF TRUST

(A) the projected cost of operating the Plan during the succeeding Plan Year divided by the projected number of Eligible Beneficiaries for that Plan Year; and

(B) the projected number of the Plan's Eligible Beneficiaries for the succeeding Plan Year that are attributable to such Operator.

The anticipated benefit experience and administrative expenses of the Plan as a whole, and amounts needed to eliminate any accumulated deficit, shall be taken into account in projecting the cost of operating the Plan. The per beneficiary premium determined under this section shall continue in effect for each month of the succeeding Plan Year, except that the Trustees shall determine a revised per beneficiary premium for any Operator with respect to which new Eligible Beneficiaries are added to the Plan. Any revised monthly installment shall be based upon the number of Eligible Beneficiaries attributable to the Operator as of the date the new installment is calculated.

Special First Year Rule--The amount of the per beneficiary premium shall be set as soon as practicable after January 1, 1993 for the first Plan year.

(4) Each 1988 Last Signatory Operator shall provide to the Trust a bond, letter of credit, or amount held in escrow (or any combination thereof) meeting the following conditions:

(A) If a bond, it is issued by a corporate surety company that is an acceptable surety for purposes of section 412 of ERISA.

(B) If a letter of credit, it is issued by a bank or similar financial institution satisfactory to the Trustees.

(C) If an amount held in escrow, it meets the conditions set forth in subsection (F).

(D) The bond, letter of credit, or escrow is in an amount equal to three times the cost, as projected by the Trustees, of providing health care benefits for one year for all individuals receiving benefits from the Plan who are attributable to such Operator, plus all individuals receiving benefits from an individual employer plan maintained by such Operator who are entitled to receive such benefits under section 9711 of the IRC. The Trustees shall annually redetermine the cost of providing health benefits for the individuals described in this subsection.

1992 PLAN -- AGREEMENT AND DECLARATION OF TRUST

 (E) The bond, letter of credit, or escrow is kept in force for as long as there exist individuals attributable to the 1988 Last Signatory Operator that are described in subsection (D). A surety bond meets the requirements of this subsection only if it is no less than a one-year term bond (with cancellation provisions) which requires replacement prior to absolute release.

 (F) Amounts held in escrow. --

 (I) An amount held in escrow meets the requirements of this subsection if it is held by an irrevocable trust, established by the Trustees or by a 1988 Last Signatory Operator and acceptable to the Trustees, under section 501(c)(9) of the IRC.

 (II) A 1988 Last Signatory Operator may elect to meet the requirements of subsection (D) by contributing the required amount to the trust described in paragraph (I) over a period of nine years, or if financial criteria established by the Trustees are met, over a longer period not to exceed 20 years.

 (III) If a 1988 Last Signatory Operator elects to fund the amount held in escrow over a period of years, pursuant to paragraph (II), it shall pay to the general assets of the 1992 Trust an additional premium for each year until the full amount required under subsection (D) (derived from such Operator's contributions and any interest or earnings thereon) is held in the trust described in paragraph (I). The Trustees shall determine the amount of such additional premium based upon the number of years in the funding period applicable to the 1988 Last Signatory Operator. The additional premium obligation set forth in this paragraph shall not apply after the trust described in paragraph (I) holds the full amount required under subsection (D), but the 1988 Last Signatory Operator shall continue to be obligated to contribute to such trust any amounts necessary each year to comply with increases in the amount required under subsection (D).

 (IV) To the extent that any amount (derived from a 1988 Last Signatory Operator's contributions and any interest or earnings thereon) held by a trust described in paragraph (I) exceeds the amount required under subsection (D), or exceeds the total projected future cost of providing health care benefits for all individuals described in subsection (D), such amount may be used to pay the obligations of the plan maintained by such Operator under section 9711 of the IRC.

- 13 -

1992 PLAN -- AGREEMENT AND DECLARATION OF TRUST

(G) Any bond, letter of credit or cash escrow described in this section shall be paid to the Trust in the event that the 1988 Last Signatory Operator fails to meet its obligation to provide benefits required under section 9711 of the IRC. If a person becomes a successor of a Last Signatory Operator after October 24, 1992, and if the Last Signatory Operator has transferred any liability of such operator under this Trust to such successor, then the Last Signatory Operator shall not be obligated to provide the security required under the provisions of this section for any period during which the successor provides such security.

(5) The Trustees may designate a qualified representative to conduct an audit of the employment and retiree medical records, or any other records deemed probative by the Trustees, of any Last Signatory Operator or 1988 Last Signatory Operator to permit the Trustees to fulfill their obligations under this Trust.

(6) The amounts due under Section (3) shall be paid monthly, in such form and manner as required by the Trustees.

(7) In the event that an Operator fails to comply with any financing requirement hereunder, interest (calculated at a rate established by the Trustees at the beginning of each calendar year) shall accrue from the date due until the date on which an amount owed is paid. If no such interest rate is established, the rate of interest shall be the amount prescribed under Section 6621 of the IRC. In addition, the Operator shall be assessed liquidated damages in an amount equal to the greater of twenty percent (20%) of the amount owed or the amount of interest charged. The Trustees are empowered to waive the imposition of liquidated damages for good cause.

(8) The Trustees are empowered to collect all amounts owed through any means they so choose. All reasonable expenses incurred by the Trustees in enforcing the financing requirements of this Article, including, but not limited to, reasonable attorneys' fees, accountants' fees, and court costs, with interest, shall be added to the obligation of the Operator. The Trustees shall have the authority to settle or compromise any claims, suits or legal actions in their discretion, as they deem to be in the best interest of the Trust.

(9) It is the intent of this Trust that all individuals who are eligible to receive coverage from an individual employer plan pursuant to section 9711 of the IRC shall, if at all possible, receive such coverage from such individual employer plan and not

- 14 -

## 1992 PLAN -- AGREEMENT AND DECLARATION OF TRUST

from the 1992 UMWA Benefit Plan. Accordingly, the Trustees shall exert every effort to enforce the obligations of such section in any case in which an individual becomes an Eligible Beneficiary by virtue of his or her failure to receive the coverage required under that section. Notwithstanding the foregoing, no action of the Trustees nor any provision of this Trust shall limit any obligation of a Last Signatory Operator, 1988 Last Signatory Operator or Related Person to comply with the financing requirements of the Act as set forth in this Article, nor shall it limit the obligation of the 1992 Plan to provide benefits during any period to Eligible Beneficiaries.

(10) Any person that is a Related Person with respect to a Last Signatory Operator or 1988 Last Signatory Operator shall be treated as such Operator and shall be jointly and severally liable with such Operator for any obligation imposed under this Article.

ARTICLE XII.   (Amendments)

The Union and BCOA, by joint action, reserve the right at any time and from time to time to modify or amend in whole or in part any or all of the provisions of this instrument, or to terminate this Trust as permitted by law, by a written agreement. Any written agreement shall be signed by the President of BCOA and by the International President of the Union.

The Trustees are authorized, upon prior written approval by the Union and BCOA, to make such changes to the provisions of this Agreement and Declaration of Trust as they may deem to be necessary or appropriate. The Trustees are authorized and directed, after adequate notice and consultation with the Union and BCOA, to make such changes in this Agreement and Declaration of Trust or the Plan (provided such amendments are consistent with the purposes of the Plan and Trust), including any retroactive modifications or amendments, which shall be necessary:

> (1) To obtain all necessary determination letters or rulings from the Internal Revenue Service or other applicable federal agencies, so as to ensure compliance with all applicable federal laws and regulations and to ensure the qualification of the Plan and Trust and the deductibility for income tax purposes of any and all payments in connection with the financing requirements hereunder, as paid or incurred;

1992 PLAN -- AGREEMENT AND DECLARATION OF TRUST

      (2) To conform the terms of the Plan and Trust to the requirements of the Coal Industry Retiree Health Benefit Act of 1992, ERISA, or any other applicable federal law, and the regulations issued thereunder; or

      (3) To comply with all applicable court or government decisions or rulings.

In the event, however, that the Trustees determine that an amendment or amendments are necessary in order to obtain an initial determination of qualification under the applicable provisions of the Internal Revenue Code, they shall so advise the Union and BCOA, and no amendment shall be effective unless agreed to in writing by the Union and BCOA.

    The Union, BCOA, and the Trustees shall fully cooperate to obtain all necessary rulings and do all other acts appropriate to ensure that any payments made in accordance with the financing requirements hereunder are deductible for Federal Income Tax purposes.

ARTICLE XIII.   (Use of trust assets)

    Except as otherwise permitted by law, and notwithstanding anything to the contrary contained in this instrument, or any amendment hereto, it shall be unlawful for any part of the Trust other than such part as is required to pay taxes and administrative expenses, to be used for, or diverted to, purposes other than for the sole and exclusive benefit of the Eligible Beneficiaries, except that in the case of a contribution which is made by an Operator or a Related Person by a mistake of fact or law (other than a mistake relating to Plan qualification), such mistaken contribution may be returned to the Operator or Related Person within six months after the Trustees determine that the contribution was mistakenly made.

ARTICLE XIV.   (Applicable law)

    This instrument shall be construed, regulated and administered under Federal law.

**1992 PLAN -- AGREEMENT AND DECLARATION OF TRUST**

(Signatures)

IN WITNESS WHEREOF, the Union and BCOA, pursuant to proper authority, have caused this instrument to be signed by their proper officers or representatives in Washington, D.C. on this ___3___ day of __Jan__, 1994.

UNITED MINE WORKERS OF AMERICA

_____
International President

BITUMINOUS COAL OPERATORS' ASSOCIATION, INC.

_____
President

Accepted by:

Dated: __1/18/95__    _____
                      Trustee

Dated: __1-18-95__    _____
                      Trustee

Dated: __1-18-95__    _____
                      Trustee

Dated: __1/18/95__    _____
                      Trustee

- 17 -