IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL H. HOLLAND, MICHAEL W. BUCKNER, A. FRANK DUNHAM and ELLIOT A. SEGAL, as TRUSTEES OF THE UNITED MINE WORKERS OF AMERICA 1992 BENEFIT PLAN,<br><br>Plaintiffs,<br><br>v.<br><br>VALLEY SERVICES, INC.<br><br>and<br><br>BIBEAU CONSTRUCTION COMPANY, INC.,<br><br>Defendants. | No. 1:06-cv-00178-RMU |

### DEFENDANT BIBEAU CONSTRUCTION COMPANY, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN <u>OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>

Defendant Bibeau Construction Company, Inc. ("Defendant" or "Bibeau Construction"), through undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 56, submits the following Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Summary Judgment.

### <u>INTRODUCTION</u>

Movants, the Trustees of the United Mine Workers of America 1992 Benefit Plan ("Plaintiffs"), seek judgment against Valley Services, Inc. ("Valley Services") and Bibeau Construction for $120,625.15 in monthly Coal Act premiums covering the period February 1993 through August 2007, together with claimed interest through August 15, 2007 in the amount of $47,392.91, and liquidated damages in the additional amount of $47,392.91. The premiums in

question are purportedly payable with respect to Arthur Marcum, Jr., a former employee of Valley Services, whom the United Mine Workers of America 1992 Benefit Plan ("1992 Benefit Plan" or "Plan") enrolled in 1995, and his dependent daughter. The Plan expended $36,127.25 in actual health care costs for Mr. Marcum and his dependent from February 1993 through December 2006. Memorandum of Points and Authorities in Support of Defendant Bibeau Construction Company, Inc.'s Motion for Summary Judgment ("Mem. P. & A. in Support of Def.'s Mot. for Summ. J.") Exhibit 8 at 11 (R. 9, Exhibit 8 at 11) (expenditures for January – August, 2007 not available).

Plaintiffs persist in praying in equity for a permanent injunction against defunct Valley Services to "timely pay [its] premiums", Complaint 4(d) (R.1 at 4(d)), and move the Court to render judgment against Valley Services. They do so after discovery and in the face of their own recognition more than a decade ago (reaffirmed but ignored in their 2007 Rule 56 papers) that this former signatory coal operator *dissolved* in the early 1980s. *See, e.g.*, Plaintiffs' Memorandum in Support of Motion for Summary Judgment ("Pls.' Mem. in Support of Mot. for Summ. J.") 4 (R. 8 at 4).

Valley Services quite plainly is not amenable to suit at this late date, nor have Plaintiffs tendered proof of service of process under Federal Rule of Civil Procedure 4(i), Fed. R. Civ. P. 4(i), evidencing its resurrection and being hailed before this Court.[1] Plaintiffs' motion is properly denied as moot as to Valley Services. *See, e.g.* Fed. R. Civ. P. 4(m) (authorizing *sua sponte* dismissal of party defendant upon plaintiff's uncured failure to effect service). Tellingly,

---

[1] *See, e.g., Holland v. Kitchekan Fuel Corp.*, 137 F. Supp. 2d 681, 686 (S.D. W.Va. 2001) (rejecting Plaintiffs' attempt in 1999 to sue former signatory operator Jumacris Mining, Inc. dissolved in 1985 while noting, "[i]t would completely violate the objective of finality of corporate dissolutions for this court to hold a dissolved corporation liable for an obligation completely arising after the corporation were dissolved.").

2

Plaintiffs pursue the same substantive lawsuit now that they had against defunct Valley Services (and any IRC controlled group member) in May 1995, after they were injured when they enrolled Mr. Marcum in the Plan. The only distinction is that in May 1995 the 1992 Benefit Plan claimed only $13,000 in premiums on behalf of Mr. Marcum and his dependent (back to February 15, 1993) whereas they now seek $120,000 in premiums and $84,000 in interest and damages.

Plaintiffs separately seek judgment against Defendant Bibeau Construction on the basis that the Coal Industry Retiree Health Benefit Act of 1992, 26 U.S.C. § 9701-9722 ("Coal Act"), makes Bibeau Construction jointly and severally liable for Valley Services' premium obligations. In support of their claim against Bibeau Construction, Plaintiffs rely on section 9712(d)(4) of the Coal Act, which states that a "related person" is jointly and severally liable for the obligations of a "last signatory operator," and on section 9701(c)(A)(i) of the Coal Act, which, for purposes of this case, defines a "related person" to Valley Services as any separate trade or business that shared 80 percent or more common ownership with Valley Services at the time it went out of business in November 1979. Pls.' Mem. in Support of Mot. for Summ. J. 8-9 (R. 8 at 8-9).

Plaintiffs have not delineated the facts that they rely upon as uncontested material facts, and Defendant accordingly reserves the right to respond to same upon Plaintiffs' supplementation consistent with Local Rules 7 and 56.1. However, for the reasons stated below, even assuming the proffered "pleadings, . . . answers to interrogatories, and admissions on file, together with the [Plaintiffs' sole] affidavit [(R. 8, Att. 4)], . . . show that there is no genuine issue as to any material fact," Plaintiffs cannot prevail on their claim against Bibeau Construction, and are therefore not entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

3

**ARGUMENT**

I.  **Plaintiffs Are Not Entitled To Summary Judgment Against Bibeau Construction Because Their Claim Is Barred By The Statute Of Limitations.**

In early 1995, more than fifteen years after Valley Services went out of business, Plaintiffs determined that Mr. Marcum and his dependent were eligible for enrollment in the 1992 Benefit Plan retroactive to February 1993. Eleven years after enrolling Mr. Marcum, Plaintiffs filed the instant February 1, 2006 Complaint (R. 1) asserting that Bibeau Construction is a related person to Valley Services. Plaintiffs now invite the Court to render summary judgment for the 1992 Benefit Plan because "Defendant, Bibeau Construction has not raised any valid legal defense to this suit." Pls.' Mem. in Support of Mot. for Summ. J. 6 (R. 8 at 6). Plaintiffs' claim is made, however, without having had the opportunity to review Defendant's September 10, 2007 dispositive motion, Mem. P. & A. in Support of Def.'s Mot. for Summ. J. 6 (R. 9). As Defendant demonstrated in its own motion for summary judgment, the Plan's case is properly dismissed as time barred not having been filed for nearly *five years* after the applicable six-year limitations lapsed on May 15, 2001. *See* 29 U.S.C. § 1451(f). The basis for Bibeau Construction's legal defense that the Plaintiffs' claim falls well outside the generous limitations period afforded to investigate and sue related companies under the single employer doctrine is set forth in Defendant's cross motion for summary judgment. Mem. P. & A. in Support of Def.'s Mot. for Summ. J. (R. 9). In the interest of brevity, that analysis is incorporated by reference, and will not be repeated here.

Assuming *arguendo* that Plaintiffs seasonably sued Bibeau Construction for Valley Services' premium liabilities, and that Defendant's further defense – the equitable doctrine of laches – finds no application, for the reasons set forth below, and in the alternative, Plaintiffs are

4

nonetheless barred from recovering the amount of interest and liquidated damages demanded in their Complaint (R. 1) and summary judgment papers (R. 8).

## II. Plaintiffs Are Not Entitled To The Amount Of Interest And Liquidated Damages Demanded In Their Complaint.

### A. Plaintiffs have not provided support for the amount of interest they assert is due.

Plaintiffs brought suit in February 2006 praying for the recovery of $100,000 in delinquent Coal Act "contributions" "plus interest thereon from the date such amount became due and owing, together with liquidated damages." Complaint 4(c) (R. 1 at 4(c)). Movants now assert that the 1992 Benefit Plan's Director of Finance and General Services "has determined that the interest on the delinquent contributions through August 15, 2007 is $47,392.91." Pls.' Mem. in Support of Mot. for Summ. J. 11 (R. 8 at 11). They further aver that this calculation is based on the interest rate(s) prescribed in Section 6621 of the Internal Revenue Code. To support this claim, they provide the Declaration of Dale Stover, Director of Finance and General Services. Pls.' Mem. in Support of Mot. for Summ. J., Exhibit C (R. 8, Exhibit C). Mr. Stover's Declaration, however, merely parrots the summary assertion in Plaintiffs' brief that interest has been calculated through August 15, 2007 in the amount of $47,392.91, furnishing no backup or schedule showing the claimed installment accrual of interest during the prior fourteen and one-half years. Thus, it is unknown whether the Plan calculated interest on a daily, monthly or yearly basis, or whether they seek simple interest or compounded interest, or whether they correctly selected and applied during this fourteen year period the rates provided by I.R.C. Section 6621. It is also unclear whether Plaintiffs seek interest for the period February 1993 through April 1995. As noted *infra* at page 6, note 2, Plaintiffs cannot possibly demonstrate a legal basis for assessing interest during this period. Defendant (and the Court) can neither verify nor

meaningfully contest a lump sum demand under these conditions. Plaintiffs presumably would have in their possession a schedule (not produced in discovery) showing how the Plan calculated the accrual of interest charges that underlie the sum demanded, otherwise the lump sum demand would be sheer guesswork.

Inasmuch as Plaintiffs' liquidated damages demand is predicated upon and equal to the interest calculations, it suffers from the same factual deficiencies. If the unsupported and undocumented amount of fourteen and one-half years of accrued interest "from the date such amount became due and owing," Complaint 4(c) (R. 1 at 4(c)), lacks sufficient detail to support a judgment for Plaintiffs' interest claim, their liquidated damages claim is equally defective, for the same reasons.

**B.      Plaintiffs are not entitled to interest prior to January 2005.**

Plaintiffs assert that Bibeau Construction must pay premiums retroactive to February 1993. It therefore appears Plaintiffs' position is that interest began to accrue at this time.[2] Under the circumstances at hand, however, consistent with the public policies supporting the ERISA enforcement regime, the Plan's entitlement to interest properly coincides with its first notifying Defendant of the claimed premium liability in December 2004. As developed in Defendant's Summary Judgment brief, the 1992 Benefit Plan sat on its hands and did not so much as pick up the file or the phone to pursue this "delinquency" between May 1995, when it was approximately $13,000, and 2001 when it topped $50,000. *See* Mem. P. & A. in Support of Def.'s Mot. for

---

[2]      Assuming this is Plaintiffs' position, it would mean that the Plan is demanding that Defendant pay interest during the period February 1993 until April 1995, even though Mr. Marcum was not even enrolled in the Plan until April 1995, and under no theory can the Plan demonstrate that any premium was payable prior to that date. *See* Mem. P. & A. in Support of Def.'s Mot. for Summ. J., Exhibit 6. Moreover, even though Plaintiffs assert that Defendant is obligated to pay premiums retroactive to February 1993, by their own admission the Plan expended no money to provide benefits to Mr. Marcum or his dependent until 1995. *Id.* at Exhibit 11, p. 11.

Summ. J., Exhibit 12 (R. 9, Exhibit 11 at 4-5). After putting the file down for another three years, the Plan happened upon a MSHA website including a historical listing for Bibeau Construction as the controlling company for Valley Services' long defunct, late 1970s coal operation.

This is thus not a case, for example, like *Holland v. Robert Coal Co.*, 986 F. Supp. 621 (D.D.C. 1997), where these same Plaintiffs timely sued Coal Act related persons in 1993 for recovery of interest and liquidated damages based on uncollected (but escrowed), *id.* at 625 n.7, premiums "attributable to Robert Coal for the period February 1993 to April 1994," *id.* at 625. In marked contrast, prior to December 2004, Defendant could not possibly have known that the Plan had been providing benefits to Mr. Marcum for eleven years (retroactive to February 1993). Indeed, in their December 6, 2004 letter, Plaintiffs stated that Bibeau Construction had twenty days to pay $86,478.98 in premiums retroactive to February 1993. *See* Mem. P. & A. in Support of Def's. Mot. for Summ. J., Exhibit 13 (R.9, Exhibit 13).

Even if Bibeau Construction, which never employed Mr. Marcum, did not receive any economic benefit from his brief employment with Valley Services in the late 1970s, and never had any contractual obligation to contribute to a predecessor UMWA health benefit fund on his behalf, can be called on to pay premiums for Mr. Marcum at this late date, it was never notified of the instant "delinquency" until December 2004. Although the Plan was certainly aware as early as 1995 that it was providing benefits for Mr. Marcum, Plaintiffs never informed Bibeau Construction of this until the end of 2004, and, under these circumstances, Defendant can not reasonably or legally be held accountable for payment of sums about which it was unaware. Accordingly, interest does not properly begin to accrue until Bibeau Construction failed to pay the Plan $86,478.98 on December 27, 2004, in accordance with the date specified in the Plan's

December 6, 2004 letter. Otherwise the Plan – praying for substantial sums of interest (and intertwined liquidated damages) "from the date such amount became due and owing," Complaint 4(c) (R. 1 at 4(c)) – capitalizes on and is rewarded for its own inexplicable and inordinate delay.

Since Plaintiffs apparently assert entitlement to interest from February 1993 while furnishing no schedule documenting pertinent monthly interest calculations, *see supra* at 5, Defendant's cannot ascertain how much of the Plan's $47,392.91 interest claim is allocable to the period beginning December 26, 2004. Suffice it to say, however, Plaintiffs' interest claim encompasses fourteen and one-half years, and the time elapsed since December 26, 2004 represents only a small fraction of that span.

Plaintiffs' $47,392.91 liquidated damages claim is likewise unsubstantiated and flies in the face of bedrock fairness and repose principles. The maximum amount allowable under the Coal Act is the greater of (i) 20 percent of the delinquent contribution; or (ii) the amount of accrued interest. The present maximum "delinquency" here is $120,625.15 (even assuming the Plan may now collect monthly premiums arising more than a decade before notifying the payor). Twenty percent of this amount is $24,125.03, which is substantially less than the amount asserted in the Complaint.

Indeed, the facts in this case present the more fundamental question of whether the Plan is entitled to any award of liquidated damages. The purpose of the statutory provision for an award of liquidated damages is to induce contributors to promptly pay promised contributions to a multiemployer plan.[3] This is not the typical case where employers are subject to a labor

---

[3]   See generally, Staff of Senate Comm. on Labor and Human Resources, 96th Cong., *S.1076, The Multiemployer Pension Plan Amendments of 1980: Summary and Analysis of Consideration* 43-44 (Comm. Print 1980).

contract that requires contributions to a multiemployer, and are therefore aware of their duty to make payments.

Ironically, Plaintiffs' demand that Bibeau Construction pay more than $47,000 in liquidated damages in this case substantially exceeds the total amount the Plan actually expended during the prior fourteen years to provide benefits to Mr. Marcum and his dependent. In effect, the Plan now seeks to convert a form of additional recovery authorized under Section 502(g)(2)(C)(ii) of ERISA, 29 U.S.C. § 502(g)(2)(C)(ii), into a penalty, because the amount flows from the fact the Plan itself failed to inform Defendant of the asserted obligation for eleven years, a period during which Bibeau Construction was not and could not have even been aware that the Plan had a basis for demanding the premiums in question.

## **CONCLUSION**

For the foregoing reasons, including those expressly incorporated by reference herein and set forth in Defendant's pending dispositive motion (R. 9), the Court should deny Plaintiffs' Motion for Summary Judgment and grant Judgment in favor of Defendant.

---

Failure of employers to make promised contributions in a timely fashion imposes a variety of costs on plans. While contributions remain unpaid, the plan loses the benefit of investment income that could have been earned if the past due amounts had been received and invested on time. . . . Federal pension law must permit trustees of plans to recover delinquent contributions efficaciously. . . . The public policy of this legislation . . . mandates that provision be made to discourage delinquencies and simplify delinquency collection. . . . A plan sponsor that prevails in any action to collect delinquent contributions will be entitled to recover the delinquent contributions, court costs, attorney's fees, and double interest on the contributions owed. *The intent of this section is to promote the prompt payment of contributions and assist plans in recovering the costs incurred in connection with delinquencies.* (emphasis added)

Respectfully submitted,

_____/s/_____
John R. Woodrum
D.C. Bar # 933457
OGLETREE, DEAKINS, NASH, SMOAK,
  & STEWART
Fifth Floor
2400 N Street, N.W.
Washington, D.C. 20037
Telephone: (202) 887-0855

*Counsel for Defendant Bibeau Construction Company, Inc.*