IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL H. HOLLAND, et al.,<br><br>    Plaintiffs,<br> v.<br><br>VALLEY SERVICES, INC.<br><br>and<br><br>BIBEAU CONSTRUCTION COMPANY, INC.<br><br>    Defendants. | Civil Action No. 1:06-cv-00178-RMU |

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT, BIBEAU CONSTRUCTION COMPANY, INC.'S MOTION FOR SUMMARY JUDGMENT

  Plaintiffs, Michael H. Holland, Micheal W. Buckner, A. Frank Dunham, and Elliot A. Segal, as Trustees of the United Mine Workers of America ("UMWA") 1992 Benefit Plan ("1992 Plan") hereby submit the following Memorandum of Points and Authorities in Opposition to Defendant's, Bibeau Construction Company, Inc. ("Defendant" or "Bibeau Construction"), Motion for Summary Judgment.

  Defendant's Motion for Summary Judgment is meritless, as it does not contest the facts establishing Defendant's liability and the procedural defenses it does raise – statute of limitations and laches – disregard controlling law from the United States Supreme Court. Defendant's motion should be denied in all respects.

**ARGUMENT**

    A.  **Plaintiffs' Lawsuit is Timely Filed Under Sections 4301(f)(1)&(2)**

        **1. Under Section 4301(f)(1) Plaintiffs Are Entitled to All Amounts Due From February 1, 2000 To The Date of Filing This Action**

The Defendant contends that the applicable statute of limitation begins to run on the date upon which the disabled miner and his dependant child were enrolled into the 1992 Plan. However, as noted in Plaintiffs' Memorandum in Support of Motion for Summary Judgment, Section 9721 of the Coal Industry Retiree Health Benefit Act of 1992, (the "Coal Act"), 26 U.S.C. §9721, states that enforcing the obligations that arise under the Coal Act shall be done in the same manner as that required by Section 4301 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §1451, as that section pertains to withdrawal liability.  Section 9721 of the Coal Act, states that:

> The provisions of section 4301 of the Employee Retirement Income Security Act of 1974 shall apply to any claim arising out of an obligation to pay an amount required to be paid by this chapter in the same manner as any claim arising out of an obligation to pay withdrawal liability under subtitle E of title IV of such Act.  For purposes of the preceding sentence, **a signatory operator and related persons shall be treated in the same manner as employers.**  (Emphasis added.)

26 U.S.C. §9721.

Section 4301(f) of ERISA provides:

> An action under this section may not be brought after the later of
> (1)     6 years after the date on which the cause of action arose, or
> (2)     3 years after the earliest date on which the plaintiffs acquired or should have acquired actual knowledge of the existence of such cause of action; except that in the case of

> fraud or concealment, such action may be brought not later than 6 years after the date of discovery of the existence of such cause of action.

29 U.S.C. §1451(f).

Under the plain language of the statute it is clear that under the applicable 6 year limitations period contained in Section 4301(f)(1) Plaintiffs are entitled to all amounts, principle and interest, that have accrued within the six year period of the date of the filing of the complaint on February 1, 2006.

The United States Supreme Court has held that for or in actions brought under 29 U.S.C. §1451, "a new cause of action, carrying its own limitations period, arises from the date each payment is missed." Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Calif., Inc., 522 U.S. 192, 194 (1997). The Court further explains that in order to trigger the statute of limitations two events must occur: (1) the Trustees must calculate the debt owed and demand payment; and (2) the employer must default on a payment. Id. at 202.[1]

Plaintiffs filed this action in a timely manner under Section 4301(f) of ERISA. 29 U.S.C. §1451(f). Pursuant to Section 4301(f)(1) the cause of action would did not accrue until the date on which the Plaintiffs' calculated the liability to the 1992 Plan, notified the assigned operator of its liability to the UMWA 1992 Benefit Plan **and** the assigned operator or related person failed to

---

[1] The Defendant's reliance on Adventure Resources, Inc. v. Holland, 193 B.R. 787 (S.D.WV 1996), aff'd, 137 F.3d 786 (4th Cir. 1998) is misplaced and can be distinguished from the instant matter for the following reasons. The court in Adventure Resources was not called upon to determine whether the applicable statute of limitations had expired. Rather the issue addressed by the court was whether the timing of the enrollment of beneficiaries into the 1992 Plan in the context of establishing the 1992 Plan's priority position in the bankruptcy matter.
   The Defendant also mischaracterizes the court's findings in United States Steel Corp. v. Astrue, No. 06-15255, 2007 U.S. App. LEXIS 19334 (11th Cir. Aug. 15, 2007). In this case, the court was called upon to determine the validity of beneficiary assignments to the UMWA Combined Benefit Fund. It should be noted that this was **not** a case in which the UMWA Combined Benefit Fund was seeking delinquent contributions. Rather the parties in this case were disputing the Social Security Administration's assignment of Combined Benefit Fund beneficiaries to a particular company. The portion of the decision that the Defendant provided in its MSJ Memo is taken out of context. The court was not referring to the time in which the Combined Benefit Fund had to initiate its lawsuit to recover delinquent contributions, but was referring to the time in which the assigned operator had to challenge the beneficiaries assigned to it by the Social Security Administration.

make the payment of the prescribed date.[2]  29 U.S.C. §1451(f)(1).  Further, like the withdrawal liability payments at issue in Bay Area Laundry, the monthly per-beneficiary premiums owed to the 1992 Plan accrue each month.  For this reason, a new cause of action arises each month that the monthly per-beneficiary premium is owed and not paid; and concurrently a new statute of limitation begins to run.

It is undisputed that on December 4, 2004, the Plaintiffs first notified the Defendant of its liability to the 1992 Plan for monthly per-beneficiary premiums owed pursuant to Section 9712(d) of the Coal Act.  26 U.S.C. § 9712(d).  See  Defendant's Memorandum of Points and Authorities in Support of Motion for Summary Judgment (hereinafter referred to as Defendant's MSJ Memo) at 17.   The Defendant also does not dispute the fact that it is a related person to Valley Services, as defined by the Coal Act.[3]   In accordance with 29 U.S.C. § 1451(f) and the United States Supreme Court's holding in Bay Area Laundry, the cause of action accrued in this case **no sooner than** December 4, 2004, the date upon which Plaintiffs calculated the debt owed and demanded payment.  To date, the Defendant has failed to pay, thus completing the two

---

[2] The Defendant confuses its statutory obligation to pay the monthly per-beneficiary premiums to the 1992 Plan with the actual amounts expended by the 1992 Plan to provided health benefits to the instant disabled coal miner and his dependant child.  The monthly per-beneficiary premiums owed to the 1992 Plan are based on the projected future cost of providing health benefits to the entire population of 1992 Plan beneficiaries.  The actual costs of providing health benefits to any one particular beneficiary does not affect the amount of the monthly per-beneficiary premium owed by assigned operators and their related persons.

[3] The Defendant's contention that it is unfair to hold it responsible for the health benefits of a disabled and retired miner that it never employed is contradictory to its admission of being a related person, and is nothing more than a complaint that it thinks that the Coal Act is unfair.  Section 9701(c)(7) of the Coal Act states that "[f]or purposes of this chapter, a person shall be considered to be in business if such person conducts or derives revenue from any business activity, whether or not in the coal industry."  26 U.S.C. §9701(c)(7).  Further, it is well established that the term "related persons" under the Coal Act, is defined broadly to ensure that coal operators would not be able to avoid their obligations to the 1992 UMWA Benefit Plan.  See Holland v. Big River Minerals Corp., 181 F.3d 597, 601-602 (4th Cir. 1999), cert. denied 2000.  See also Holland v. Delray Connecting R.R. Co., 311 F.Supp 2d 744, 746 (N.D.IN  2004)(finding that ". . . even where a corporation itself is not, and never has been, involved in the coal industry, if it is a subsidiary of a corporation engaged in the coal industry or of a corporation that controls other subsidiaries engaged in the coal industry (i.e., the corporation in question has sibling corporation in the coal industry), it may be required to pay annual premiums to the United Mine Workers of America Combined Benefit Fund. . . .").

4

required events. Plaintiffs filed this lawsuit on February 1, 2006, which was well within the six years provided for in section 4301 (f)(1).

### 2. Under Section 4301(f)(2) Plaintiffs Are Entitled to All Amounts Due Prior to   February 1, 2000

Section 4301(f)(2) of ERISA provides for an alternate statute of limitations, that being "3 years after the earliest date on which the plaintiffs acquired or should have acquired actual knowledge of the existence of the cause of action;  except that in the case of fraud or concealment, such action may be brought not later than 6 years after the date of discovery of the existence of the cause of action ." 29 U.S.C. §1451(f)(2).

The Defendant's allegation that determining Bibeau Construction to be a related person to Valley services was "simple" is self-serving at best.[4]  It strains credibility for the Defendant to argue that the Plaintiffs should have known, in April 1995, that by calling the phone number listed on the Appendix to the National Bituminous Coal Wage Agreement of 1978 for the defunct company, Valley Services, that the Plaintiffs would have been informed by Bibeau Construction that it was a related person to Valley Services.[5]  Defendant's MSJ Memo at 14.  At all times since the enactment of the Coal Act, Bibeau Construction was the only party to possess

---

[4] Another self-serving argument that the Defendant asserts is that if this Court does not hold Bibeau Construction liable for the delinquent and future monthly per-beneficiary premiums, that the disabled coal miner and his dependant child's health benefits will not be affected. This fact does not relieve Bibeau Construction of its statutorily impose obligations to the 1992 Plan. The 1992 Plan is only able to provided health benefits if there is money with which to do so. The funding for the 1992 Plan is set forth in the Coal Act and the 1992 Plan's financial ability to provide these health benefits **is** dependant upon the money received from monthly per-beneficiary premiums.

[5] The actions that the Defendant "may" have taken to determine "related persons" under the Coal Act are not relevant.

5

the information that would conclusively show that it was a related person to Valley Services and yet it failed to notify the 1992 Plan.[6]

While the Plaintiffs knew that the disabled coal miner was being enrolled in the 1992 Plan in April 1995 and that Valley Services had been out of business since November 1979, it did not know that Defendant, Bibeau Construction was a related person. Plaintiffs fortuitously discovered information in 2004 that led it to believe that there was a strong likelihood that Bibeau Construction was a related person to Valley Services. The information in the possession of the Plaintiffs at the time was not conclusive. Accordingly, on December 4, 2004 the Plaintiffs made an initial demand on Bibeau Construction for payment, but qualified the demand by requesting that Bibeau Construction provided the 1929 Plan with any information they may have that demonstrated that they were not related to Valley Services. The Defendants failed to come forward at that time with information of any kind, even the information in their possession which cemented their related person status. Throughout the next calendar the Plaintiffs engaged in numerous discussions with Defendant's initial counsel, and supplied Defendant's counsel with extensive documentary information regarding the facts that the 1992 Plan had uncovered. However, counsel turned aside all attempts to obtain information from Defendant Bibeau Construction. It was not until attempts at voluntary compliance failed and Plaintiffs filed suit and took discovery that Bibeau Construction produced the records that showed conclusively that it is a related person to Valley Services. Defendant Bibeau Construction is a privately held company whose records are generally not publicly available to plaintiffs or anyone else absent

---

[6] Defendant's argument that the 1992 Plan never sought to verify the earnings of the disabled coal miner is unfounded. The Defendant attached to its MSJ Memo the 2004 earnings verification letter that was sent to the disabled coal miner. Further, the Defendant has not produced any evidence that would prove the disabled coal miner had earnings that would disqualify him from receiving health benefits from the 1992 Plan. The Defendant's continued disparaging remarks regarding the actions of the disabled coal miner in this matter should be disregarded entirely due to the complete lack of proof on the Defendant's part.

cooperation from the defendant. Plainly no cooperation was given here. While Bibeau Construction apparently does not admit to the fact, it was Bibeau Construction's legal responsibility to review it records and comply with its statutory liability and it failed to do so. Defendant's argument that an earlier phone called to Bibeau Construction would have provided Plaintiffs with the information it needed to make the related person connection has to be taken as cynical at best given its continued concealment when the question was directly and repeatedly raised in 2004 and 2005. Plaintiffs, in attempting to avoid suing a company if it had no liability, were strung along with request after request, as Bibeau Construction sought to evade its liability for as long as possible. Now Bibeau Construction comes before this Court complaining of unfairness and seeking equity where plainly none is, or should be, available. Therefore, the Plaintiffs' instant lawsuit, which was filed on February 1, 2006, was filed timely per 29 U.S.C. §1451(f)(2), as it was filed within 6 years after the date on which it acquired knowledge of the cause of action against Bibeau Construction due to company's continued concealment of its liability, even after a demand and request for such information from Plaintiffs.

For the foregoing reasons, Plaintiffs' action is not time barred by the statute of limitations as set forth in Section 4301(f) of ERISA. 29 U.S.C. §1451(f).

### B. The Defense of the Equitable Doctrine of Laches is not Available to Defendant

Bibeau Construction devotes much of its summary judgment brief to a completely irrelevant discussion of the doctrine of laches and how it applies to its skewed view of the "facts" in this case.[7] The Court does not need to address any of the arguments raised by the Defendant

---

[7] The Defendant attempts to argue "facts" that are simply not the facts of this case. The Defendant suggests that *if* the disabled coal miner in this matter had applied at an earlier time for his disability pension, he *may* have been enrolled in the UMWA Combined Benefit Fund. Defendant's MSJ Memo at 21. Thus, the Defendant states that 2006 amendments to the Coal Act *would* have effected a withdrawal of the assigned beneficiaries to the UMWA

because binding authority from the United States Supreme Court and multiple decisions of the Circuit Courts of Appeal preclude the Defendant from even raising laches as a defense in this case.

It is well established law that the equitable doctrine of laches is not available as a defense to an action in which there is a statutorily imposed statute of limitations. In <u>Homberg v. Armbrecht</u>, the Supreme Court held that "[i]f Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. <u>The Congressional statute of limitations is definitive</u>." 327 U.S. 392, 395 (1946) (Emphasis added.) The Supreme Court has also held that "laches within the term of the statute of limitations is no defense at law." <u>United States v. Mack</u>, 295 U.S. 480, 489 (1935)(citations omitted).

In <u>Lyons Partnership, L.P. v. Morris Costumes, Inc.</u>, 243 F.3d 789 (4th Cir. 2001), the Fourth Circuit held that the judicially created doctrine of laches cannot be invoked where Congress has established a statute of limitations governing a cause of action. The <u>Lyons Partnership</u> court continued to find:

> Consequently, when considering the timeliness of a cause of action brought pursuant to a statute for which Congress has provided a limitations period, a court should not apply laches to overrule the legislature's judgment as to the appropriate time limit to apply for actions brought under the statute. *Separation of powers principles thus preclude us from applying the judicially created doctrine of laches to bar a federal statutory claim that has been timely filed under an express statute of limitations.*

243 F.3d at 798 (emphasis added).

---

Combined Benefit Fund who were assigned to companies that were not signatory to the 1988 NBCWA. Id. This argument does not rely on the facts of this case and is mere conjecture. Therefore, this argument too must be rejected.

More recently, the Fourth Circuit reaffirmed its holding in <u>Lyons Partnership</u>, noting once again, that "[s]eparation of powers concerns prevents a court from applying a judicially-created doctrine to overrule a congressionally-created time limit." <u>McDaniel v. United States</u>, 40 Fed. Appx. 790, 2002 U.S. App. LEXIS 14028 (4th Cir. 2002). As a result, the Fourth Circuit in <u>McDaniel</u> noted, "when Congress enacts a statute of limitations that provides a period within which a litigant may bring a cause of action, the litigant is entitled to rely on that period." <u>Id.</u>

As detailed in the preceding argument, Congress has enacted a statute of limitations that applies to actions brought under the Coal Act. These statute of limitations are found in 29 U.S.C. §1451. In this case, it is undisputed that the Plaintiff calculated the amounts owed to the 1992 Plan, demanded payment in December 2004, and the Defendant has failed to make those payments. The instant action was brought in February 2006, clearly within the applicable six year statute of limitations. For this reason, the Court need not even consider Bibeau Construction's laches defense. The defense of laches is simply unavailable to the Defendant in this action. <u>See</u> <u>United States v. Mack</u>, 295 U.S. 480 (1935); <u>Thomas v. Freeway Foods</u>, 406 F.Supp. 2d 917, 920 (M.D.NC 2005) ("Congress specified a statute of limitations for Plaintiff's claims" and because "Plaintiff's complaint was filed within that limitation . . . their claim is not barred by the doctrine of laches."); <u>Combs v. Western Coal Corporation</u>, 611 F.Supp. 917, 920 (D.DC 1985)(holding that because Congress established a six year statute of limitations for withdrawal liability and because the action was filed with that statutory period, "there is an applicable statute of limitations which has not yet expired, so defendant cannot rely of laches as a defense . . . ." (citations omitted)); <u>Connor v. Hi-Heat Coal Company, Inc.</u>, 772 F.Supp. 1 (D.DC 1991).

9

**CONCLUSION**

Defendant admits to being jointly and severally liable for the payment of monthly per-beneficiary premiums to beneficiaries assigned to its related person Valley Services. The Defendant has failed to raise any valid legal defenses to this action. The statute of limitations has not expired and the defense of laches is unavailable to the Defendant as a matter of law. For the foregoing reasons, the Court should deny Defendant's Motion for Summary Judgment.

Respectfully submitted,

DAVID W. ALLEN
General Counsel
DC Bar #81638

LARRY D. NEWSOME
Associate General Counsel
DC Bar #254763

*/s/ Kathleen B. Burns*
KATHLEEN B. BURNS
Senior Associate Counsel
DC Bar #492460
UMWA HEALTH & RETIREMENT FUNDS
Office of the General Counsel
2121 K Street, N.W.
Washington, D.C. 20037
Telephone: (202) 521-2233

Attorneys for Plaintiffs

197022791.doc