## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

MICHAEL H. HOLLAND,

                    Plaintiffs,

v.                                          CIVIL ACTION NO. 2:06-cv-00692

NORTH STAR CONTRACTORS, INC.

                    Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the court are the plaintiffs' motion for summary judgment [Docket 31] and the defendant's motion for summary judgment [Docket 33]. The plaintiffs in this case are the Trustees of the 1992 United Mine Workers of America ("UMWA") Benefit Plan ("1992 Plan"), a multi-employer health benefit fund established by I.R.C. § 9712. They have sued the defendant, North Star Contractors, Inc. ("North Star"), for non-payment of premium contributions allegedly owed under the Coal Industry Retiree Health Benefit Act of 1992 ("Coal Act"), I.R.C. § 9701 *et seq.* (West 2002). For the reasons set forth below, the court **GRANTS** the plaintiffs' motion and **DENIES** the defendant's motion.

### I. Background

The 1992 Plan provides health care benefits to certain eligible coal industry retirees and their eligible dependants and is funded primarily by premiums paid by the "last signatory operator," the last employer for whom the retirees worked under UMWA contract. I.R.C. §§ 9701(c)(1), (3), (4) and 9712 (d)(6). Under the Coal Act, last signatory operators are responsible for "the payment of

a monthly per beneficiary premium . . . for each eligible beneficiary of such operator." I.R.C. § 9712(d)(1)(B). If a last signatory operator is no longer in business, liability for contributions under the Coal Act extends to businesses, known as "related persons," that are related by common ownership. *See Holland v. Cline*, No. 2:05-cv-535, 2006 WL 1728012 (S.D. W. Va. June 21, 2006). These related persons "shall be jointly and severally liable with [the last signatory operator] for any amount required to be paid by such operator under this section." I.R.C. §§ 9704(a) and 9712(d)(4); *see also* I.R.C. § 9701(c)(2).

A related person is defined as an individual who is "a member of the controlled group of corporations (within the meaning of section 52(a)) which includes such signatory operator." I.R.C. § 9701(c)(2)(A). Section 52(a) indicates that the term "controlled group of corporations" includes the following groups: parent-subsidiary controlled group, brother-sister controlled group, and combined group. I.R.C. § 52(a) (referencing I.R.C. § 1563(a)). Section 1563(a)(2) defines a Brother-sister controlled group as "[t]wo or more corporations if 5 or fewer persons who are individuals, estates, or trusts own (within the meaning of subsection (d)(2)) stock possessing [at least 80 percent] of the total combined voting power of all classes of stock entitled to vote or [at least 80 percent] of the total value of shares of all classes of stock of each such person only to the extent such stock ownership is identical with respect to each such corporation." I.R.C. § 1563(a)(2); *see also* I.R.C. § 52(a) (instructing that "controlled group of corporations" has the meaning provided in Section 1563(a) except that "at least 80 percent" shall be substituted for "more than 50 percent"). Finally, Section 1563 provides that for purposes of determining whether a corporation is a member of a brother-sister controlled group, "[a]n individual shall be considered as owning stock in a corporation owned, directly or indirectly, by or for his spouse." I.R.C. § 1563(d)(2) and (e)(5).

-2-

The Trustees allege that the defendant, North Star, is liable as a related person for monthly premiums attributable to retiree Vernal Moore, who worked under a UMWA contract for a company known as Tracy Coal Company ("Tracy"). (Trustees' Mem. Summ. J. 2.) The Trustees assert that Tracy was a signatory to the 1984 National Bituminous Coal Wage Agreement, that Mr. Moore and his dependents are beneficiaries enrolled in the 1992 Plan, and that Mr. Moore and his dependants are attributed to Tracy because he last worked in classified employment for Tracy. (*Id.* at 2.) Tracy ceased operations in 1988 and was dissolved in 1997. On July 20, 1992, the date on which the Coal Act requires related-person relationships be determined, Tracy was owned by four individuals–Dorothy Porter, Roger Deskins, Roger Kirk, and Carl Kirk–each of whom owned a 25 percent share of the common stock of Tracy. I.R.C. § 9701(c)(2)(B); (North Star's Resp. Pls.' First Set Interrogs., Ex. C, Trustees' Mem. Summ. J. at 4-5.) On that same date, North Star was also owned by four individuals, each of whom owned a 25 percent interest. (North Star's Resp. Pls.' First Set Interrogs., Ex. C, Trustees' Mem. Summ. J. at 4.) These four individuals were the same as those owning Tracy, except that Harold Porter, rather than Dorothy Porter, owned the fourth 25 percent share. (*Id.*) The Trustees assert that because Dorothy Porter and Harold Porter are husband and wife, and because the stock ownership of North Star and Tracy was identical, North Star and Tracy are brother-sister corporations, and therefore North Star is jointly and severally liable for Tracy's Coal Act obligations.

-3-

### III. Standard for Summary Judgment

To obtain summary judgment, the moving party must show that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court will not, however, "weigh the evidence and determine the truth of the matter." *Id.* at 249. Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Id.* at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. *Overstreet v. Kentucky Cent. Life Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991).

### IV. Discussion

#### A. Tracy's Liability as a Last Signatory Operator under the Coal Act

The plaintiffs have satisfied their burden of showing that no genuine issue of material fact exists regarding Tracy's status as Vernal Moore's last signatory employer. North Star does not

dispute that Tracy was the last signatory operator of Vernal Moore and his dependents, that these beneficiaries are enrolled in the 1992 Plan, or that Tracy is responsible for Vernal Moore and his dependants. As a last signatory operator, Tracy, is liable for "the payment of a monthly per beneficiary premium ... for each eligible beneficiary ... receiving benefits under the 1992 UMWA Benefit Plan." I.R.C. § 9712(d)(1)(B) and (d)(3). It is undisputed that Tracy has failed to pay monthly per beneficiary premiums since September 15, 2000.

### B. North Star's Liability as a Related Person

The ownership of both North Star and Tracy as of July 20, 1992 is undisputed. On July 20, 1992, four individuals–Roger Deskins, Roger Kirk, Carl Kirk, and Dorothy Porter/Harold Portor–owned 100 percent of each company. The ownership was identical because Dorothy Porter and Harold Porter, as husband and wife, are constructively considered as owning the other's stock. *See* I.R.C. § 1563(d)(2) and (e)(5). The court **FINDS** that North Star and Tracy were under common control as defined by I.R.C. § 9701(c)(2)(A) and that these companies are therefore related persons. Thus, North Star is jointly and severally liable for all premiums owed by Tracy.

### C. Amount of Damages

The plaintiffs seek monthly beneficiary premiums in the amount of $109,747.50, representing premium payments accrued from September 15, 2000 through June 15, 2007. The defendant has offered no evidence to rebut the plaintiffs' Declaration setting forth the amounts owed by Tracy and North Star. The Trustees additionally seek interest, liquidated damages, and reasonable attorneys' fees and costs as provided for under Section 9721 of the Coal Act. Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), instructs that in an action to enforce an obligation arising under the Coal Act in which judgment is entered in favor of the plan, "the court shall award

the plan" the unpaid contributions, interest, liquidated damages, and reasonable attorneys' fees and costs.[1] The plaintiffs seek the following damages as provided for by 29 U.S.C. § 1132(g)(2): $21,763.59 in interest; liquidated damages of 20 percent of the defendant's unpaid premiums, totaling $21,949.50; and reasonable attorneys' fees and costs. In addition to the premiums, this court must award interest, a sum equal to the interest or liquidated damages, whichever is greater, and reasonable attorney's fees and costs because this lawsuit is brought by fiduciaries of the 1992 Plan. *Holland v. Keyrock* Energy, Civ. No. 5:06-cv-916, 2007 WL 3070492 (S.D. W. Va. Oct. 19, 2007); *Holland v. Cardiff Coal Co.*, 991 F. Supp. 508 (N.D. W. Va. 1997). The defendant does not contest the Trustees' entitlement to these additional damages. The court **FINDS** that the amount of damages is undisputed and awards the plaintiffs $153,460.59. By statute, the Court is also required to award the plaintiffs reasonable attorney's fees and costs. The Trustees are **ORDERED** to submit an affidavit setting forth their costs and attorneys' fees within thirty (30) days of the entry of the accompanying Judgment Order.

---

[1] Section 502(g)(2) is applicable to the claims asserted by the Trustees via a winding path of ERISA section references. Section 9721 of the Coal Act, provides that Section 4301 of the Employee Retirement Income Security Act of 1974 ("ERISA") should apply, "in the same manner as any claim arising out of an obligation to pay withdrawal liability" to any claim "arising out of an obligation to pay any amount required to be paid by this chapter." I.R.C. § 9721(1). Section 4301 of ERISA, in turn, instructs that in an action to compel an employer to pay withdrawal liability "any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution." 19 U.S.C. § 1451(b). Employers are required to make obligated contributions in accordance with the terms and conditions of such plan. 29 U.S.C. § 1145. Finally, Section 502(g)(2), 29 U.S.C. § 1132(g)(2), provides the applicable awards in actions involving enforcement of an employer's obligations under Section 515. *Id.* at § 1132(g)(2).

*D. Defenses Asserted by the Defendant*

North Star claims that the Trustees' claims are barred by the statute of limitations, laches and by the doctrine of estoppel. Under Section 9721 of the Coal Act, which adopts the statute of limitations set forward Section 4301 of ERISA, 29 U.S.C. § 1451(f), an action to collect obligations from employers may not be brought after the later of:

(1) 6 years after the date on which the cause of action arose, or

(2) 3 years after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action; except that in the case of fraud or concealment, such action may be brought not later than 6 years after the date of discovery of the existence of such cause of action.

29 U.S.C. § 1451(f).

The defendant asserts that the "applicability of the six year statute of limitations is in question" because the Trustees never demanded payment from the defendant and therefore their cause of action never accrued. The defendant bases this assertion on *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp.*, 522 U.S. 192 (1997), in which the Supreme Court held that the statute of limitations on a cause of action to collect withdrawal liability under the Multiemployer Pension Plan Amendments Act ("MPPAA") does not begin to run until the trustees set an installment schedule and demand payment and the employer fails to make payment on the withdrawal schedule set by the fund. North Star suggests that, likewise, the Trustees' cause of action under the Coal Act never accrued because the Trustees failed to calculate the debt, set a schedule of installments, or demand payments from North Star.

Unlike the MPPAA, accrual of a cause of action under the Coal Act does not require the Trustees to set an installment schedule and demand payment or for the employer to fail to make payment on that schedule. The MPPAA explicitly requires trustees to notify the employer of the

-7-

amount of the liability and the schedule of liability payments, and to demand payment in accordance with that schedule. 29 U.S.C. § 1399. The Coal Act places no such obligation on the plan sponsors. Rather, the Coal Act directs that each last signatory operator or related person "shall be responsible" for the payment of a monthly per beneficiary premium. 26 U.S.C. § 9712(d). Accordingly, the Trustees had the later of six years after the cause of action arose, or 3 years after they acquired or should have acquired actual knowledge of the existence of their cause of action, to pursue their claims.

The Supreme Court, in *Bay Area Laundry*, held that "each missed payment creates a separate cause of action with its own six-year limitations period." 522 U.S. at 195. The Coal Act requires the payment of a monthly per beneficiary premium and the Trustees seek monthly premiums which came due between September 15, 2000 and June 15, 2007. I **FIND** the Trustees' action, filed on September 7, 2006, was within the applicable six year statute of limitations, and thus timely.

Alternatively, the defendant asserts that the Trustees' claims should be barred by the doctrines of laches or equitable estoppel. While the Fourth Circuit recognizes the doctrine of laches, the applicability of the doctrine is limited when Congress establishes a statute of limitations for the cause of action. *McDaniel v. United States*, 40 Fed. Appx. 790, 792 (4th Cir. 2002) ("Laches is an affirmative defense to an equitable claim that is available when the claimant has demonstrated a 'lack of diligence' that prejudiced the party against whom the claim is made."). "[W]e have held that 'when considering the timeliness of a cause of action brought pursuant to a statute for which Congress has provided a limitations period, a court should not apply laches to overrule the legislature's judgment as to the appropriate time limit to apply for actions brought under the statute.'" *Id.* (quoting *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 798 (4th Cir.

-8-

2001)). Here, Congress enacted a statute of limitations that provides when a litigant may bring a cause of action under the Coal Act. Accordingly, this court declines to consider the applicability of the doctrine of laches to this matter.

In addition, the defendant argues that the Trustees are estopped from pursuing their claims because under a prior settlement agreement between Tracy, North Star, and the Trustees of the 1974 Pension Plan, "it was anticipated that North Star Contractors, Inc. was resolving any liability for Tracy Coal Company, once and for all." (Def.'s Mem. Opp'n Mot. Summ. J. 7.) The settlement agreement related to the withdrawal liability of Tracy Coal and North Star under the 1974 Pension Plan. Although the 1974 Pension Plan and the 1992 Fund are separate, the defendant asserts that the six UMWA Funds are operated under common control, utilize a common comptroller, share employees, and utilize the same General Counsel to pursue claims against entities that owe sums to the fund. The defendant claims that the settlement resolved all of North Star's liability and that the Trustees, through their silence and failure to act, have allowed North Star to rely on this understanding.

The settlement agreement between Tracy Coal, North Star, and the Trustees of the 1974 Pension Plan clearly does not relieve Tracy Coal or North Star from liability under the other funds. The settlement agreement states:

> It is further understood and agreed that acceptance of the sums set forth in Paragraph 1 above by the Plan is in full accord and satisfaction of the disputed withdrawal liability claims and that payment of these sums is not an admission of liability by the Defendants, and that payment of these sums does not affect liability, if any, under any other trusts of the UMWA Health and Retirement Funds.

(Settlement Agreement and Release, Def.'s Mem. Opp'n Mot. Summ. J. Ex. F at 8.) North Star's belief that the settlement agreement resolved it of any liability arising under other Funds is

unreasonable in light of the clear language of the settlement agreement. Accordingly, equitable estoppel is not appropriate in this case.

As stated above, the court **FINDS** that the amount of damages is undisputed. The defendant has offered no evidence to rebut the plaintiffs' Declaration setting forth the amounts owed by North Star, and its defenses have no merit. Summary judgment is appropriate where the non-moving party fails to contradict the moving party's evidence, and mere general allegations will not suffice to rebut that evidence. *See Adventure Res., Inc. v. Holland*, 193 B.R. 787, 793 (S.D. W. Va. 1996), *rev'd on other grounds*, 137 F.3d 786 (4th Cir. 1998); *see also Johnson v. McKee Baking Co.*, 398 F. Supp. 201 (W.D. Va. 1975), *aff'd*, 532 F.2d 750 (4th Cir. 1976). Accordingly, the court **GRANTS** the plaintiffs' motion for summary judgment as to the amount owed by North Star as set forth herein and **DENIES** North Star's motion for summary judgment.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    March 4, 2008

Joseph R. Goodwin, Chief Judge

-10-