UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL HOLLAND *et al.*,                :
                                         :
        Plaintiffs,                     :   Civil Action No.:   06-0178 (RMU)
                                         :
        v.                              :   Document Nos.:     8, 9
                                         :
VALLEY SERVICES, INC. *et al.*,          :
                                         :
        Defendants.                     :

### MEMORANDUM OPINION

**GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART THE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; ORDERING FURTHER BRIEFING ON DAMAGES**

### I. INTRODUCTION

This matter is before the court on the parties' cross-motions for summary judgment. The plaintiffs are trustees of the United Mine Workers of America 1992 Benefit Plan ("the 1992 Plan") who seek to recover from defendant Bibeau Construction Company, Inc. ("the defendant")[1] amounts paid to certain beneficiaries pursuant to the Coal Industry Retiree Health Benefit Act of 1992 ("the Coal Act" or "the Act"), 26 U.S.C. § 9712, and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(21)(A). The plaintiffs argue that, in addition to the amounts paid to the beneficiaries, the defendant is also liable for interest, liquidated damages and attorneys' fees and costs under the Coal Act. In contrast, the defendant contends that the applicable statute of limitations and the equitable doctrine of laches bar the plaintiffs' claims. Because the statute of limitations bars the plaintiffs' claims for

---

[1] As discussed below, defendant Valley Services, Inc. ("Valley Services") is a now-defunct company and defendant Bibeau Construction Company, Inc., as a "related person" to Valley Services, is jointly and severally liable for its debt under the Coal Act. 26 U.S.C. § 9701(c)(4). That is, defendant Valley Services, Inc. is present in this suit in name only. Because the plaintiffs do not actually seek damages from Valley Services and offer no justification for maintaining it as a party, the court dismisses Valley Services.

premiums payable before May 15, 2001, the court grants the defendant's motion for summary judgment as to those claims. The court denies the defendant's motion for summary judgment as to claims arising after May 15, 2001 and grants the plaintiffs' motion for summary judgment with respect to those claims only. On the issue of damages, the court orders further briefing for the reasons explained below.

## II.   BACKGROUND

### A.   Statutory Framework

The Coal Act represents Congress's attempt to stabilize health plan funding for retired miners and identify employers responsible for guaranteed lifetime health benefits for those miners. *E. Enters. v. Apfel*, 524 U.S. 498, 514 (1998). As part of its response to the failure of coal companies to pay the health benefits promised to their miners, Congress created the 1992 Plan as part of the Coal Act. *Holland v. Williams Mountain Coal Co.*, 496 F.3d 670, 671 (D.C. Cir. 2007). As it pertains to this case, the Act provides that the "last signatory operator," i.e., the most recent coal industry employer of a retired miner, and "related persons"[2] bear the primary responsibility to pay a monthly premium into the 1992 Plan to finance health benefits for a retiree eligible under the Act. *Id.* (citing 26 U.S.C. § 9701(c)(4)).

### B.   Factual & Procedural History

In 1962, Valley Services, Inc. was incorporated for the purpose of operating a coal mine. Pls.' Statement of Material Facts ("Pls.' Statement") ¶ 3; Def.'s Response to Pls.' Statement of Material Facts ("Def.'s Statement") ¶ 3. Ovila Bibeau and Dorothy (Bibeau) Kilbourne, husband

---

[2]   The defendant does not dispute that it is a "related person" to Valley Services, Inc. Def.'s Statement ¶ 19.

and wife at the time, became owners of Valley Services in 1975.  Pls.' Statement ¶ 4; Def.'s Statement ¶ 4.  Valley Services ceased operations in November 1979 and formally dissolved shortly thereafter.  Pls.' Statement ¶ 6; Def.'s Statement ¶ 6.  Defendant Bibeau Construction, owned entirely by Ovila Bibeau, was established in approximately 1962 and remains in operation.  Pls.' Statement ¶ 14-15; Def.'s Statement ¶ 14-15.

On September 25, 1979, Arthur Marcum, Jr., a Valley Services employee, injured his back when he jumped from a bulldozer he was operating.  Pls.' Statement ¶ 10; Def.'s Statement ¶ 10.  On April 4, 1995, the 1992 Plan approved Marcum's application for retiree health benefits coverage.  Pls.' Statement ¶ 11; Def.'s Statement ¶ 11.  Because Marcum was eligible to receive benefits retroactive to 1988, the 1992 Plan was obligated to pay for his health care costs dating back to February 1, 1993, the date the 1992 Plan was established.  Pls.' Statement ¶ 12; Def.'s Statement ¶ 12; Def.'s Mot. at 6.

On December 4, 2004,[3] the 1992 Plan notified the defendant that the defendant is a "related person" to Valley Services under the Coal Act and, therefore, jointly and severally liable for the payment of monthly premiums for Marcum.  Pls.' Statement ¶ 24; Def.'s Statement ¶ 23.  It requested payment within 20 days.  Compl. ¶ 12  Apparently receiving no response, on October 17, 2005, the 1992 Plan again contacted the defendant, demanding payment and cautioning that if it did not receive payment within 15 days, it would treat the defendant's failure to pay as a delinquency.  *Id*. ¶ 13.  The defendant, to date, has not paid the premiums, and the plaintiffs allege that it owes $120,625.16 in principal, plus interest, liquidated damages and attorneys' fees and costs.  Pls.' Mot., Ex. C ("Stover Decl.") ¶ 6.

---

[3]   The defendant alleges that the initial demand was made on December 6, 2004, but stipulates that this does not constitute a *material* fact in dispute for the purposes of summary judgment.  Def.'s Statement ¶ 23.

The plaintiffs initiated this action on February 1, 2006, *see generally* Compl., and on September 5, 2007, they moved for summary judgment, Pls.' Mot. at 12. Five days later, the defendant also moved for summary judgment. *See generally* Def.'s Mot. The court turns now to the parties' arguments.

### III.   ANALYSIS

#### A.   Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to

the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary-judgment motions in such cases with special caution. *See Aka v. Wash. Hosp. Ctr.*, 116 F.3d 876, 879-80 (D.C. Cir. 1997), overturned on other grounds, 156 F.3d 1284 (D.C. Cir. 1998) (en banc); *see also Johnson v. Digital Equip. Corp.*, 836 F. Supp. 14, 18 (D.D.C. 1993).

### B. The Court Grants in Part and Denies in Part the Defendant's Motion for Summary Judgment and Grants in Part and Denies in Part the Plaintiffs' Motion for Summary Judgment

The defendant believes it is entitled to summary judgment for two reasons. First, it argues that the plaintiffs failed to initiate this action within the six-year statute of limitations. Def.'s Mot. at 10-17. Second, it argues that, the statute of limitations notwithstanding, the equitable doctrine of laches bars recovery for the plaintiffs. *Id*. at 17-20. The plaintiffs protest that the defendant has miscalculated the triggering event for the statute of limitations and that the defendant is not entitled to a defense of laches. Pls.' Opp'n at 3-4, 7-10. Both sides agree, however, that there are no material facts in dispute. *See generally* Pls.' Statement; Def.'s

Statement.

### 1. The Applicable Six-Year Statute of Limitations Bars the Plaintiffs' Claims for Premiums Due On or Before to May 15, 2001

Claims arising under the Coal Act are subject to provisions of ERISA, including the applicable statute of limitations. 26 U.S.C. § 9721. ERISA requires a plaintiff to bring an action within six years after the date on which the cause of action accrues, or within three years after the earliest date on which the plaintiff should have acquired actual knowledge of the existence of a cause of action. 29 U.S.C. § 1451(f).[4] The defendant contends that the plaintiffs' cause of action accrued on May 15, 1995, when the first premium delinquency became due. Def.'s Mot. at 11. The six-year statute of limitations, according to the defendant, required the plaintiff to file suit by May 15, 2001. *Id*. The plaintiff argues that the statute of limitations provided for in ERISA is not triggered until (1) the trustees calculate the debt owed and demand payment; and (2) the employer defaults on payment. Pls.' Opp'n at 3 (citing *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 194 (1997)). The court agrees with the defendant to the extent that the statute of limitations bars the plaintiffs' claims for premiums due on or before May 15, 2001.

In *Bay Area Laundry*, the Court analyzed the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") and determined that when a statute imposes on employers an installment obligation, each missed payment creates a separate cause of action with its own six-year limitations period. 522 U.S. at 195. The Court reasoned that absent a contradictory directive from Congress, "a cause of action does not become 'complete and present' for limitations purposes until the plaintiff can file suit and obtain relief." *Id*. at 201 (quoting *Reiter*

---

[4] This provision is subject to an exception for fraud, not relevant here. *See* 29 U.S.C. § 1451.

*v. Cooper*, 507 U.S. 258, 267 (1993)). Therefore, the statute of limitations began to run when the MPPAA was violated, i.e., when the trustees calculated the debt, set a schedule of installments, demanded payment and the employer defaulted on the installment payments due under the established schedule. *Id.* at 201-02. *Bay Area Laundry*, however, applies the ERISA statute of limitations to an MPPAA case. *See generally id.* In the instant case, the ERISA limitations period is being applied to a suit brought under the Coal Act.

> Unlike the MPPAA, accrual of a cause of action under the Coal Act does not require the Trustees to set an installment schedule and demand payment or for the employer to fail to make payment on that schedule. The MPPAA explicitly requires trustees to notify the employer of the amount of the liability and the schedule of liability payments, and to demand payment in accordance with that schedule. 29 U.S.C. § 1399. The Coal Act places no such obligation on the plan sponsors. Rather, the Coal Act directs that each last signatory operator or related person "shall be responsible" for the payment of a monthly per beneficiary premium. 26 U.S.C. § 9712(d). Accordingly, the Trustees had the later of six years after the cause of action arose, or 3 years after they acquired or should have acquired actual knowledge of the existence of their cause of action, to pursue their claims.

*Holland v. N. Star Contractors, Inc.*, No. 06-692, at 7-8 (S.D.W.Va. Mar. 12, 2008). This court adopts the reasoning in *North Star Contractors*. The Coal Act applies the six-year ERISA limitations period "to any claim arising out of an obligation to pay any amount required to be paid by this chapter." 26 U.S.C. § 9721. The MPPAA, on the other hand, specifically notes that plan sponsors must notify the employer of the amount of the liability and the schedule for payments and make a demand for those payments. 29 U.S.C. § 1399.

The 1992 Plan determined that Marcum was eligible for benefits on April 4, 1995 and the first premium payment was due on May 15, 1995. *See* Pls.' Statement of Material Facts ¶ 11; Def.'s Mot., Ex. 14. That is, the defendant had an obligation to pay the premium and defaulted on that obligation on May 15, 1995. Therefore, the six-year statute of limitations expired on May 15, 2001, and all claims to premiums due on or before that date are time barred. *Holland v.*

*Cline*, 2006 WL 1728012, at *4 (S.D.W.Va., June 21, 2006) (declaring that the *Bay Area Laundry* holding that "a new cause of action arises on each date a payment is not made" is applicable to cases brought under the Coal Act).

### 2. Laches Does Not Bar Claims That Accrued After May 15, 2001

The defendant contends that the the equitable doctrine of laches bars the plaintiffs' claims. Def.'s Mot. at 17-21. The plaintiff responds that, because Congress has articulated a specific statute of limitations, laches is not an available defense. Pls.' Opp'n at 7-9.

The doctrine of laches "stems from the principle that equity aids the vigilant, not those who slumber on their rights, and is designed to promote diligence and prevent enforcement of stale claims." *Powell v. Zuckert*, 366 F.2d 634, 636 (D.C. Cir. 1966) (internal quotation omitted). To establish the defense of laches, a defendant must show that the plaintiff's delay in bringing the action was unreasonable and that the defendant is prejudiced as a result of the delay. *Id.* Where there is an applicable statute of limitations, however, the defense of laches does not apply. *United States v. Mack*, 295 U.S. 480, 489 (1935) (holding that "[l]aches within the term of the statute of limitations is no defense at law") (internal citation omitted); *see also Holmberg v. Armbrecht*, 327 U.S. 392, 395 (1946) (stating that "[t]he Congressional statute of limitation is definitive"); *Saffron v. Dep't of the Navy*, 561 F.2d 938, 941 (D.C. Cir. 1977) (noting that the court must obey Congress's mandate in prescribing a statute of limitations); *Connors v. Hi-Heat Coal Co., Inc.*, 772 F. Supp. 1, 1 n.1 (D.D.C. 1991) (declining to permit the defense of laches in an ERISA case because there is an applicable statute of limitations); *Combs v. W. Coal Corp.*, 611 F. Supp. 917, 920 (D.D.C. 1985) (same). Because Congress has explicitly provided for a statute of limitations in this case, the defendant cannot claim the defense of laches.

### C. The Parties Shall Submit Further Briefing on the Issue of the Defendant's Liability

The plaintiff argues that the defendant is liable for $120,625.16 in per-beneficiary premium debt calculated from February 15, 1993 through August 15, 2007 plus interest, liquidated damages, fees and costs. Pls.' Mot. at 5, 11. The defendant argues generally that the plaintiffs offered no support for the amount of interest they seek and, in any event, are not entitled to interest accrued before January 2005 or to liquidated damages. Def.'s Opp'n at 5-9. Because the parties only address the aggregate amount of the defendant's indebtedness, and because the court determines that the defendant is liable only for premium payments after May 15, 2001, the court requires further briefing from the parties in light of the court's ruling today.

## IV.   CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendant's motion for summary judgment, grants in part and denies in part the plaintiffs' motion for summary judgment and orders further briefing on damages. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 7th day of May, 2009.

RICARDO M. URBINA  
United States District Judge