UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL H. HOLLAND *et al.*,          :
                                       :
        Plaintiffs,            :   Civil Action No.:   06-178 (RMU)
                                       :
        v.                     :   Document No.:       22
                                       :
VALLEY SERVICES, INC. *et al.*,        :
                                       :
        Defendants.            :

## MEMORANDUM OPINION

GRANTING THE PLAINTIFFS' MOTION TO ALTER OR AMEND AN
INTERLOCUTORY JUDGMENT; ORDERING SUPPLEMENTAL BRIEFING ON DAMAGES

### I. INTRODUCTION

This matter is before the court on the plaintiffs' motion to alter or amend the court's decision to grant in part and deny in part the parties' cross-motions for summary judgment. The plaintiffs are trustees of the United Mine Workers of America 1992 Benefit Plan who seek to recover from the defendants pursuant to the Coal Industry Retiree Health Benefit Act ("the Coal Act"), 26 U.S.C. § 9701 *et seq.*, and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* In response to cross-motions for summary judgment, the court ruled that the defendants were liable for certain claims under the Coal Act, but that certain claims were time-barred. The plaintiff subsequently filed a motion to alter or amend the court's calculation of the applicable statute of limitations. Because the plaintiffs' motion would properly adjust the application of the statute of limitations, the court grants the plaintiffs' motion.

## II.  FACTUAL & PROCEDURAL HISTORY

In 1962, Valley Services, Inc. was incorporated for the purpose of operating a coal mine. Compl. ¶ 8.  Ovila Bibeau and Dorothy Kilbourne, husband and wife at the time, became owners of Valley Services in 1975.  Pls.' Mot. for Summ. J. at 4.  Valley Services ceased operations in November 1979, *id.*, and formally dissolved shortly thereafter.  Defs.' Mot. for Summ. J. at 4. Defendant Bibeau Construction, which is owned entirely by Ovila Bibeau, was established in approximately 1962 and has been in operation since that time.  Pls.' Mot. for Summ. J. at 4.

On September 25, 1979, Arthur Marcum, Jr., a Valley Services employee, injured his back when he jumped off of a bulldozer that he was operating.  Defs.' Mot. for Summ. J. at 4. On April 4, 1995, Marcum's application for retiree health benefits coverage from the United Mine Workers of America 1992 Benefit Plan ("the 1992 Plan") was approved, but he was informed that Valley Services was no longer in business.  *Id*. at 4-5.  As a result, the 1992 Plan agreed to pay his medical bill until it could identify a company that was related to Valley Services.  *Id*. at 5.  The 1992 Plan was obligated to pay for his health care costs dating back to February 1, 2003, the date the 1992 Plan was established.  *Id* at 6.  The 1992 Plan paid more than $4,000 in medical bills for Marcum and his dependent child.  *Id*.

On December 6, 2004, the 1992 Plan notified Bibeau Construction that it was a related person to Valley Services under the Coal Act and, therefore, it would be considered jointly and severally liable for the payment of monthly premiums for Marcum.  Compl. ¶ 12.  The 1992 Plan requested payment within twenty days.  *Id.*  Receiving no response, on October 17, 2005, the 1992 Plan again contacted Bibeau Construction, demanding payment and cautioning that if no payment was received within 15 days, the failure to pay would be treated as a delinquency.  *Id*. ¶

13.  The plaintiffs alleged that Bibeau Construction owed the principal sum of $100,573.90, plus interest, liquidated damages and attorney's fees and costs. *Id.* ¶ 14.

The plaintiffs initiated this action in February 2006, *see generally* Compl., and in September 2007, they moved for summary judgment. Pls.' Mot. for Summ. J. at 12. The court granted in part the plaintiffs' motion for summary judgment and ordered supplemental briefing on the issue of damages. *See generally* Mem. Op. (May 7, 2009). The plaintiffs subsequently filed a motion for relief upon reconsideration. *See generally* Pls.' Mot. for Reconsideration ("Pl.'s Mot."). With that motion now ripe for adjudication, the court now turns to the relevant legal standards and the parties' arguments.

### III. ARGUMENT

#### A. Legal Standard for Altering or Amending an Interlocutory Judgment[1]

A district court may revise its own interlocutory decisions "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b); *see also Childers v. Slater*, 197 F.R.D. 185, 190 (D.D.C. 2000) (citing the Advisory Committee Notes to Federal Rule of Civil Procedure 60(b)). The standard for the court's review of an interlocutory decision differs from the standards applied to final judgments under Federal Rules of Civil Procedure 59(e) and 60(b). *Compare Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d

---

[1]  The plaintiffs filed this motion under Rule 59(e). *See generally* Pl.'s Mot. As the defendants note, however, Rule 59(e) only applies to final judgments, and the court has not yet issued a final judgment in this case. Defs.' Opp'n at 1-2. Because the court's partial judgment is interlocutory in nature, *Debrew v. Reno*, 2001 WL 469076, at *1 (4th Cir. May 3, 2001), the court construes the plaintiffs' motion as a motion to alter or amend an interlocutory judgment under Rule 54(b). *See Snyder v. Smith*, 736 F.2d 409, 419 (7th Cir. 1984) ("The Federal Rules are to be construed liberally so that erroneous nomenclature in a motion does not bind a party at his peril."); *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 527 (9th Cir. 1983) ("The court will construe [a motion], however styled, to be the type proper for the relief requested.").

42, 48 n.6 (D.D.C. 2001) (noting that "motions for [relief upon] reconsideration of interlocutory orders, in contrast to motions for [relief upon] reconsideration of final orders, are within the sound discretion of the trial court") *and United Mine Workers v. Pittston Co.*, 793 F. Supp. 339, 345 (D.D.C. 1992) (discussing the standard applicable to motions to grant relief upon reconsideration of an interlocutory order) *with LaRouche v. Dep't of Treasury*, 112 F. Supp. 2d 48, 51-52 (D.D.C. 2000) (analyzing the defendant's motion for relief from judgment under Rule 60(b)) *and Harvey v. District of Columbia*, 949 F. Supp. 878, 879 (D.D.C. 1996) (ruling on the plaintiff's motion to alter or amend judgment pursuant to Rule 59(e)).  A motion pursuant to Rule 59(e), to alter or amend a judgment after its entry, is not routinely granted.  *Harvey*, 949 F. Supp. at 879.  The primary reasons for altering or amending a judgment pursuant to Rule 59(e) or Rule 60(b) are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.  *Id.*; *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam); FED. R. CIV. P. 60(b); *LaRouche*, 112 F. Supp. 2d at 51-52.

By contrast, relief upon reconsideration of an interlocutory decision pursuant to Rule 54(b) is available "as justice requires."  *Childers*, 197 F.R.D. at 190.  "As justice requires" indicates concrete considerations of whether the court "has patently misunderstood a party, has made a decision outside the adversarial issues presented to the [c]ourt by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the court."  *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004) (internal citation omitted).  These considerations leave a great deal of room for the court's discretion and, accordingly, the "as justice requires" standard amounts to determining "whether [relief upon] reconsideration is necessary under the relevant

circumstances." *Id.* Nonetheless, the court's discretion under Rule 54(b) is limited by the law of the case doctrine and "subject to the caveat that, where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99 101 (D.D.C. 2005).

### B. The Court Grants the Plaintiff's Motion to Alter or Amend

The plaintiffs argue that the court was correct to deem the defendants liable under the Coal Act. Pls.' Mot. at 5. Nevertheless, the plaintiffs contend that the court's precise calculation of the statute of limitations for multiemployer pension funds, which is governed by ERISA, requires adjustment. *Id.* at 5-6. In contrast, the defendants dispute the merits of the court's ruling in its entirety, arguing instead that all of the plaintiffs' claims are time-barred. Defs.' Opp'n at 2-4.

The Supreme Court has set forth a unique and specific framework to analyze the statute of limitations for claims involving multiemployer pension funds. *See Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 194 (1997). *Bay Area Laundry* holds that each missed payment under a multiemployer pension fund creates a separate cause of action with its own six-year limitations period. *Id.* at 194-96. To calculate the proper statute of limitations, therefore, a court must begin with the date the complaint was filed and then count backwards to determine which causes of action were timely at the time the plaintiff filed suit. *Id.* Here, the court initially calculated the statute of limitations by calculating the date when the first premium was time-barred and then counted forwards six years. *See* Mem. Op. at 7 ("[T]he defendant had an obligation to pay the premium and defaulted on that obligation on May 15, 1995. Therefore, the six-year statute of limitations expired on May 15, 2001, and all claims

to premiums due on or before that date are time barred."). This analysis, however, deviates from the framework set forth in *Bay Area Laundry*.

Under the *Bay Area Laundry* framework, the arithmetic proceeds as follows: the complaint in this matter was filed on February 1, 2006. *See generally* Compl. Therefore, the court is required to count backwards by six years to February 1, 2000 and deem the plaintiff's claim to be timely inasmuch as it seeks to recover payments that were missed after that date. *Bay Area Laundry*, 522 U.S. at 196-97. Under this formula, the court concludes that the plaintiff's claim is timely insofar as it seeks to recover any payments that were missed on or after February 1, 2000. Accordingly, the court grants the plaintiffs' motion.[2]

## IV.  CONCLUSION

For the foregoing reasons, the court grants the plaintiff's motion to alter or amend the court's interlocutory judgment. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 28th day of February, 2012.

RICARDO M. URBINA
United States District Judge

---

[2] Adjudication of the extent of the damages to which the plaintiffs are entitled requires further briefing on damages, as the parties conducted separate valuations of the plaintiff's claims. *See generally* Pl.'s Supplemental Briefing of Damages; Defs.' Opp'n to Pl.'s Supplemental Briefing on Damages. Accordingly, the court cannot determine the precise amount of damages absent more up-to-date briefings from the parties. The court will therefore issue an order requiring supplemental briefing in light of the court's present decision.